USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1870 WALTER F. BIGGINS, Plaintiff, Appellant, v. THE HAZEN PAPER COMPANY, ROBERT HAZEN and THOMAS N. HAZEN, Defendants, Appellees. ____________________ No. 96-1871 WALTER F. BIGGINS, Plaintiff, Appellee, v. THE HAZEN PAPER COMPANY, ROBERT HAZEN and THOMAS N. HAZEN, Defendants, Appellants. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Michael A. Ponsor, U.S. District Judge] ____________________ Before Boudin, Circuit Judge Campbell and Bownes, Senior Circuit Judges. ____________________ Maurice M. Cahillane with whom John J. Egan and Egan, Flanagan and Cohen, P.C. were on briefs for plaintiff. Robert B. Gordon with whom John H. Mason and Ropes & Gray were on briefs for defendants. ____________________ April 18, 1997 ____________________ BOUDIN,  Circuit  Judge .   This Flying Dutchman of a case has returned to us after a first trial, a panel decision, Supreme Court review, a further panel decision, an en banc order directing a further trial on one count, and then a second trial, followed now by the instant appeal. We hope that this opinion will bring the matter to a close, for a decade of litigation about a single, narrow event is enough. I. The case began in February 1988 when Walter Biggins brought suit in district court against his former employer, Hazen  Paper  Company, and its two principals, Robert Hazen, the president, and his cousin, Thomas Hazen, the treasurer. The company  is  a  small but successful maker of specialty papers of various  kinds. Biggins joined the company in 1977, at age 52, and  served  as its technical director for about nine years. He had no written employment contract. During his employ, Biggins developed a superior water- based paper coating that increased the company's sales. He sought a larger salary, was given a small increase, but remained unsatisfied and sought a further increase. Biggins later claimed that in 1984 Thomas Hazen had promised him company stock instead of a further raise; Thomas Hazen denied making any such promise. Biggins, during his employ by the company, was also involved  in  two different ventures with his sons. When Thomas -2- -2- Hazen learned of this, he sought a confidentiality agreement from Biggins, limiting his outside activities during, and for a  limited  time  after,  his employment with the company. Biggins refused to sign, except in exchange for the stock he said had been promised. He was discharged in June 1986--a few weeks before his rights under the company pension plan would otherwise have vested. Biggins then sued the company and the Hazen cousins (collectively "the Hazens") in an eight-count complaint. The first two counts charged the Hazens with age discrimination under the ADEA and interference with pension rights under ERISA.1 The remaining claims, of limited importance to this appeal (except for the contract claim), were for wrongful deprivation  of  property,  wrongful discharge, fraud, conversion, breach of contract and violation of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, SS 11H and 11I. In  substance, Biggins claimed under the first two counts, respectively, that he had been fired on account of his age--he was  replaced  with a younger man--and to prevent the vesting of his  pension.   In  additional counts, he also sought the value of the  stock  allegedly  promised by Thomas Hazen and the benefit of the  paper-coating formula and method, which Biggins claimed to own.   The  gravamen  of  the remaining counts was that he had been          1ADEA  is  the  Age Discrimination in Employment Act, 29 U.S.C. S 621, et seq. and ERISA is the Employee Retirement Income Security Act, 29 U.S.C. S 1001 et seq. -3- -3- wrongfully  discharged in violation of various rights protected under state law. In its verdict, the jury largely accepted Biggins' position, apart from his claim to ownership of the formula, which it rejected. On the ADEA claim, the jury awarded him around $560,000; the ERISA award was $100,000, later adjusted downward to $93,000 on appeal. The fraud award for the allegedly  promised stock was about $315,000. Biggins was also awarded just under $267,000 for discharge in violation of contract. On two other counts, only nominal damages were awarded. Because the jury found that the age discrimination was willful, the award on the ADEA count would normally have been doubled,  see  29  U.S.C.  S  626(b), but the district court granted judgment n.o.v. in favor of the Hazens on the issue of willfulness.  In other respects, the district court upheld the jury verdict against various post-trial motions. We reserve for later discussion the issue of attorney's fees, which the district court also addressed. On appeal, a panel of this court affirmed the district court  with  several  exceptions. Biggins v. Hazen Paper Co., 953 F.2d  1405  (1st Cir. 1992). Two are pertinent here: first, the panel found that the evidence on the ADEA count supported damages  (before  doubling) of only about $420,000, but the panel also  reinstated  the  willfulness finding and doubled the reduced -4- -4- award to about $840,000. Id. at 1416. Second, the panel set aside the contract claim verdict for lack of sufficient evidence to establish a contract. Id. at 1421-24.  The  Supreme  Court then granted certiorari and vacated the panel  decision on the ADEA count. Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993). The Court held that the panel had been mistaken in relying upon the ERISA violation to supply the wrongful motive for the ADEA violation; it said that pensions might  often  correlate with age but a firing to prevent pension vesting  did  not itself amount to a firing based upon age. Id. at 611-13. The Supreme Court remanded the case to the panel to reconsider  whether the jury had sufficient evidence to find an ADEA violation once the ERISA violation was put to one side. 507 U.S. at 614. On remand, the original panel reconsidered the  ADEA  claim. In a second opinion in October 1993, it ruled that  even  disregarding the ERISA violation, enough evidence of age discrimination remained to sustain the ADEA verdict, reduced and then doubled as before. The  Hazens  then petitioned for rehearing en banc, arguing inter  alia  that the panel had misconstrued a pertinent Supreme Court decision issued shortly after its remand in this case, Hicks v. St. Mary's Honor Center, 113 S. Ct. 2742 (1993). After soliciting memoranda, the en banc court in June 1994 ordered a new trial on the ADEA count, concluding that the -5- -5- verdict  on  this  count  had been contaminated by the same mistake that had led the Supreme Court to vacate the original panel decision. Biggins unsuccessfully sought rehearing and then petitioned the Supreme Court for review, arguing that the en banc court had no power to order a new trial and that the decision to do so violated the Supreme Court's mandate. The Supreme  Court  denied  cert iorari. In re Biggins, 115 S. Ct. 614 (1994).   In  April 1996, the district court held a new two-week jury  trial  on the ADEA count. The jury returned a verdict for the Hazens.  After  various  post-trial  motions, Biggins filed the appeal now  before  us; a cross-appeal was filed by the Hazens relating only  to  attorney's fees. We begin with the attacks by Biggins upon the en banc court's remand for a new trial, and then address his claims of error in the second trial. Attorney's fees  issues,  raised  by  the Hazens' cross-appeal, are considered at the close.  II. Biggins' challenge to the en banc order requiring a new trial  is,  strictly  speaking, addressed to the wrong bench. The arguments that the remand was unlawful or unsound were presented to the en banc court in a petition for rehearing, rejected  there,  and  then  presented in a petition for certiorari which the Supreme Court denied. It is not open to the panel, -6- -6- in  the  normal  case,  to  reconsider issues decided earlier in the same  case  by  the en banc court. See United States v. DeJesus, 752 F.2d 640, 642-43 (1st Cir. 1985). Nevertheless, it may be helpful to explain why Biggins' arguments relating to authority of the en banc court are mistaken.   His  constitutional argument amounts to this: first, the Seventh Amendment prohibits any federal court from reexamining jury findings "otherwise . . . than according to the  rules  of  common law"; and second, in Biggins' view, the en banc court's new trial order overturned the jury findings of age discrimination--without any identified legal error committed by the district court. This  last  qualification  is critical. Where there is legal error, appeals courts often overturn jury verdicts, and order new  trials  or even dismissal. This occurs, for example, where evidence  has  been  wrongly admitted, or where an instruction was mistaken, or even where the evidence did not permit a reasonable jury to reach the verdict rendered. See 9A Wright &  Miller,  Fed eral Practice and Procedure S 2540 (2d ed. 1995); 11  Wright,  Miller  &  Kane, Federal Practice and Procedure S 2805 (2d ed. 1995). The  en  banc  court did find prejudicial legal error in the conduct  of  the  original  trial. The court's appraisal, as noted earlier, was that the jury was potentially misled by the same error that the Supreme Court identified in the first panel -7- -7- decision, namely, a belief that the wrongful motive (pension interference) that gave rise to an ERISA violation by itself constituted  wrongful motive under ADEA. Whether or not the en banc  court's  assessment of prejudice was invincibly supported, the  en  banc  court was free under the Seventh Amendment to make that judgment.2 Biggins'  other challenge to the en banc court's authority is also wide of the mark. He argues that when the Supreme Court  remanded the case to this court, it precluded this court from taking any action other than an up-or-down vote as to whether enough evidence remained to support the ADEA verdict. Therefore, says Biggins, the en banc court has violated the Supreme Court's mandate.  Of course, a higher court's mandate must be respected, Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168 (1939), but the issue here is the scope of the mandate. Where as here a judgment is vacated and the matter remanded, Hazen Paper Co., 507 U.S. at 617, the lower court must undo the judgment just vacated and cannot normally revisit a legal issue actually decided  by  the reviewing court. But after that, the situation is less rigid than Biggins assumes. 2The concern did not come out of the blue. Biggins had relied in his complaint upon the deprivation of pension benefits  as  an act of age discrimination and had made the same argument on appeal. -8- -8- On remand, courts are often confronted with issues that were never considered by the remanding court. And the mandate of an appellate court forecloses the lower court from reconsidering matters determined in the appellate court, it `leaves  to  the [lower] court any issue not expressly or  impliedly  disposed of on appeal.' Stevens v. F/V Bonnie Doon, 731 F.2d 1433, 1435 (9th Cir. 1984). Nguyen v. United States, 792 F.2d 1500, 1502 (9th Cir. 1986). ing, mandates require respect for what the higher although Broadly  speak court decided, not for what it did not decide.3  Here, the en banc court concluded that the contamination of the ADEA verdict required a new trial, even assuming that the remaining evidence might otherwise support a verdict for Biggins on that claim. Whether this judgment was right or wrong--and we cannot revisit it--the contamination issue had certainly not been addressed in the Supreme Court's opinion. And when Biggins made his mandate argument on certiorari, the Supreme Court denied the petition. III. The  next  claim of error presents the most difficult issue in the case. Prior to the start of the second trial, motions in  limine  were filed by both sides. One such motion, filed by Biggins,  invoked collateral estoppel and asked that the Hazens 3See also Rogers v. Hill, 289 U.S. 582, 587-88 (1933)(absent a contrary direction, a district court on remand can  permit  the  plaintiff  to 'file additional pleadings, vary or expand the issues . . . ."); Sierra Club v. Penfold, 857 F.2d 1307, 1311-12 (9th Cir. 1988); Alter Fin Corp. v. Citizens & Southern Int'l Bank, 817 F.2d 349 (5th Cir. 1987). -9- -9- be barred from relitigating issues decided in the first trial on counts other than the ADEA claim. Specifically, Biggins asked that the Hazens be precluded at trial from showing or arguing (and we quote): -- that  the  plaintiff was not fired, but left work voluntarily, -- and/or that the plaintiff was fired because he was a disloyal employee, -- and/or that the plaintiff's disloyalty created a need for the defendants to dictate that he sign a restrictive agreement. In a second in limine motion, Biggins asked that the Hazens also be precluded from showing or arguing that Biggins was seeking additional compensation when, in Spring 1986, he conditioned his signing of the confidentiality agreement on being given stock. Biggins claimed that the first trial had determined  that  he  had  been promised the stock in 1984 and that the  company  had been found liable for fraud in withholding the stock. The district judge rejected both in limine motions after an  oral  hearing, expressing some doubt but concluding that the en  banc  court had intended a full new trial on the ADEA count. The  judge  said (and Biggins readily agreed) that it could make the new trial an empty gesture if the jury were told that Biggins  was  an  innocent  victim who had been fired by the Hazens as part of an effort to defraud Biggins. The court did instruct the jury that Biggins had been fired and had not resigned. -10- -10- Collateral estoppel, now often called issue preclusion, prevents a party from relitigating at a second trial issues determined between the same parties by an earlier final judgment--sub ject to various limitations. Lundborg v. Phoenix Leasing, Inc., 91 F.3d 265, 271 (1st Cir. 1996); Restatement (Second) of Judgments S 27 (1982). But the limitations have been slowly diluted over time and most are irrelevant here. Nor do the Hazens dispute that the jury verdict in favor of Biggins at the first trial is now final except on the ADEA count. The  Hazens'  main argument against collateral estoppel has been  that  the "issues" in the two cases were different because nothing in the first trial validly determined that the Hazens had  been  motivated by age in firing Biggins (since the Supreme Court had vacated this claim). This won't wash. True, age motivation is usually the ultimate issue under the ADEA; but collateral estoppel is no longer limited to ultimate issues: necessary intermediate findings can now be used to preclude relitigation. Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 30-31 (1st Cir. 1994); Restatement (Second), Judgments S 27, comment j. (1982). Often  it  is  very  difficult to prove that the initial trial necessarily decided an intermediate issue. But in this case the special verdict form and reasonable inference indicates that several "facts" were determined by the jury on counts -11- -11- other  than  ADEA:  (1)  that Biggins was fired, (2) that the stock had been promised to him, and (3) that (in the words of the verdict form) "defendants wrongfully discharged plaintiff in order to deprive plaintiff of the promised stock compensation . . . ." At  the  new  trial,  the  jury was instructed that Biggins had been fired, so that is out of the case. But on the second issue Biggins says that the Hazens relitigated the issue of whether  they  had  promised him stock, and that appears to be the case. A good argument can be made that under standard collateral estoppel doctrine, the Hazens should not have been allowed  to  relitigate the issue whether "in fact" Thomas Hazen had promised the stock to Biggins, a point about which both Biggins and Hazen told largely inconsistent stories. Yet  if  there  was  error,  we regard it as harmless. Whether the stock was promised has little relevance to the question whether the Hazens engaged in age discrimination when they fired Biggins. Biggins argues that the Hazens purported to fire him because he refused to sign the confidentiality agreement  and  therefore  the stock promise was relevant, Biggins having  offered  to  sign  in exchange for the promised stock. But Biggins'  refusal to sign does not vanish as a plausible motive for the Hazens, regardless of whether stock was wrongly withheld. -12- -12- Obviously the Hazens wanted to relitigate the stock- promise issue, and Biggins to foreclose relitigation, because the Hazens look worse--from the standpoint of character--if they were welshing on a promise and Biggins looks worse if he were making new demands. But character evidence is not normally admissible to show conformity therewith. Fed. R. Evid.  404(a). Thus, the permissible use of the evidence about the promise was very limited so far as the ADEA claim was concerned; properly used, it added useful context, nothing more. Turning to the third "fact" in issue, we reject Biggins' claim that the jury should have been told that the Hazens fraudulently discharged Biggins to deprive him of promised stock.   How  such  an  instruction would be understood is unclear: the Hazens say that (by supplying a different motive) it cuts against Biggins' current claim that he was discharged on account  of  age;  on  the  other hand, Biggins would obviously have liked the new jury to hear the terms "fraud" and "wrongful discharge" as a dual motive. The  problem  the  jury  confronted on retrial was to sort out any age discrimination motive in the tangle of other possible motivations, including perceived disloyalty, compensation quarrels, and the like. We think that it would badly distort matters to tell the jury that in carrying out this task, it must accept that the Hazens' motivation in firing Biggins was -13- -13- wrongful or fraudulent. The glare from such an instruction would distort any effort to distinguish shadows or shades in the Hazens' actual motivation. See Fed. R. Evid. 403.4 In  sum,  there was no prejudicial error in this challenged refusal  to  apply collateral estoppel. We thus need not decide whether, even on the opposite assumption, it would make any sense to reverse here. After all, the issues have now been relitigated, collateral estoppel is a doctrine of judicial economy,  and  one  might  wonder whether--assuming no other error- -such  an  objective would be served by a third trial. Cf. Lama v. Borras, 16 F.3d 473, 476 n.5 (1st Cir. 1994) (court of appeals  will  not  review  denial of summary judgment motion after a full trial and an adverse jury verdict). IV. In addition to the two large claims of error--the attack on  the  en  banc  order  and  the collateral estoppel claim--Biggins makes six shorter claims of trial error and also seeks to resurrect the contract claim found insufficient by the first panel opinion. Only the contract claim and one of the six claimed  trial errors require any discussion; the other alleged errors  are  fairly  raised  but are answered by the Hazens and are of no general interest. 4Biggins also argues that the second jury should have been told that at the prior trial, Biggins had been found to be loyal. There is no indication from the special verdict that the first jury made a generic finding of "loyalty." -14- -14- Biggins'  strongest  claim  of error, which we do address, is that  the  district court on retrial erred by excluding evidence of  his  pension  status  and the Hazens' effort to deprive Biggins of his unvested pension plan benefits upon termination. Biggins  says  that  without this information, the jury was misled by the Hazens' effort at the second trial to portray the company  as  a  generous  employer willing to provide such benefits for Biggins. The  Hazens  argue  that  the attempted pension termination is irrelevant:  they  say  that Biggins can collect only once for the wrongful termination of his pension, and this loss was compensated  by the earlier award on the ERISA count. But that is beside the point: facts underlying one claim could be pertinent to a different claim, regardless of whether the former  claim  had been satisfied. Still, the Hazens also argue that  in  this  instance the Supreme Court expressly decided that interference with pension vesting is not age discrimination. Actually,  the Supreme Court reserved the possibility that pension evidence might occasionally be relevant where the employer is shown consciously to equate pension status with age, Hazen Paper Co., 507 U.S. at 612-613; but that is not Biggins' argument here. Rather, what Biggins wanted the jury to infer from the pension interference finding is that the Hazens are not as nice as they claim to be. Again, this is largely  forbidden character evidence, although the trial court -15- -15- has some latitude since the evidence can also be treated as context. Still, in regard to age discrimination, the Hazens' generosity vel non is at best marginally relevant. The district court had every reason to worry, in light of the Supreme Court and en banc decisions, that undue attention to pension termination would prompt yet another reversal. Even if  some  narrow  path  could have been followed--e.g., by limiting instructions--the district court was within its discretion in declining to do so. See United States v. Houlihan, 92 F.3d 1297 (1st Cir. 1996), cert. denied, 117 S. Ct. 963 (1997). Biggins' other claim relates to his post-verdict motion. Following the second trial, Biggins filed a motion to reopen the adverse judgment on the contract claim, relying upon Fed. R. Civ. P. 60(b)(6), which permits the court to undo a final judgment. His claim was that a recent state decision undermined  the  panel's  earlier rejection of the contract claim. The district court denied the motion. To understand this Rule 60(b) claim, one must return to the  original  proceedings. In the first trial, the jury awarded Biggins  about  $267,000  on his breach of contract claim; Biggins claimed that the company's "employee handbook" comprised a contract under Jackson v. Action for Boston Community Development, Inc., 525 N.E.2d 411 (Mass. 1988), and that protections it afforded against discharge had been denied to -16- -16- him. Jackson had held that "on proper proof, a personnel manual can be shown to form the basis of [such] an express or implied contract." 525 N.E.2d at 414.  On the first appeal, the panel set aside the contract claim award. The panel noted that there was no evidence that the handbook had been incorporated into a contract by negotiation or that either Biggins or the company had treated the handbook as a contract between them. 953 F.2d at 1423. The  panel  held that a judgment n.o.v. should have been granted and  vacated  the  award.   That disposition, like the several jury awards to Biggins that were not further challenged by the Hazens, became final. In the Rule 60(b) motion, Biggins argued that a more recent decision of the state's highest court, O'Brien v. New England Telephone & Telegraph Company, 664 N.E.2d 843 (Mass. 1996), conflicts with the panel's earlier treatment of the contract  issue in 1992. We agree that the panel's disposition of the contract claim might have been different had O'Brien been  decided  earlier:   its tone and language are more favorable to such recoveries than Jackson. While there is no direct contradiction, O'Brien is a gradual extension of precedent (Jackson  was  itself  an  extension of an earlier case) typical of common-law jurisprudence.  Yet the case law is very hostile to using a mistake of state  law,  still less a change in state common law, as grounds -17- -17- for a motion to reopen a final judgment under Rule 60(b)(6). though cf. Polites v. United States ,  364  U.S. 426, 433 (1960), there is good sense--as well as much precedent--to make this the rarest of possibilities.5 Al the door is not quite closed,  Decisions constantly are being made by judges which, if reassessed in light of later precedent, might have been made differently; but a final judgment normally ends the quarrel. Indeed, the common law could not safely develop if the latest  evolution in doctrine became the standard for measuring previously  resolved  claims. The finality of judgments protects against  this  kind of retroactive lawmaking. Admittedly, there is some arbitrariness (e.g., "new law" is applied in cases still  on  direct  appeal);  but, by the same token, Jackson itself had not been decided when the Hazens first handed out their employee handbook. Biggins says that the abuse of discretion standard under Rule 60(b) should not shield the district court in this case, since that court may have thought itself disabled from reconsidering the panel's holding on the contract award. But absent extraordinary circumstances, we would think it dubious practice  to  reopen a final judgment under Rule 60(b)(6) solely because of later precedent pointing in a different direction.          5Se e, e.g., Batta v. Tow-Motor Forklift Co., 66 F.3d 743,  750  (5th  Cir.  1995), cert. denied, 116 S. Ct. 1851 (1996); Overbee v. Van Waters & Rogers, 765 F.2d 578, 580 (6th Cir. 1985);  Seese  v.  Volkswage nwerk A.G., 679 F.2d 336, 337 (3d Cir. 1982). -18- -18- The fact that a different claim in this case is still alive does not comprise an extraordinary circumstance. The Hazens' cross-appeal is a challenge to the district court's award of attorney's fees. To understand the issues requires  us  to retrace several steps, beginning again with the first trial. After that trial, the district court in two stages  awarded Biggins a total of about $207,000 in fees (plus costs), reflecting Biggins' success on both the ADEA and the ERISA claims.  Attorney's  fees  are  mandatory for the successful plaintiff under the ADEA and permissible under ERISA, see 29 U.S.C. S 626(b);  29  U.S.C. S 1140; as to the latter, the district court exercised its discretion in favor of an award. No such fees were available for the common-law claims on which Biggins recovered substantial damages, namely, fraud and discharge in violation of contract. The award for the two federal claims was based upon straight time and upon hourly rates not now in issue. After the first panel opinion, Biggins--having successfully defended his verdicts on both federal claims-- sought an additional award of attorney's fees and costs for appellate work. In March 1992, the panel awarded Biggins additional fees of just under $72,000. There followed the Supreme Court remand of the ADEA claim and the second panel -19- -19- opinion where Biggins, again successful on that claim, sought further attorney's fees in November 1993. However,  in  June 1994, the en banc court vacated the ADEA award, ordering a new trial. In a companion order, the panel declined  to  award any additional fees for the first appeal, as sought by Biggins, and said that the remainder of Biggins' application for additional fees had been rendered moot by the en banc order. The case then returned to the district court where the new trial occurred in April 1996.  After  the  second  trial,  Biggins sought to execute judgment on  the  prior  awards of attorney's fees (just over $207,000 for the  first  trial  and  almost $72,000 for the first appeal). The Hazens, by contrast, moved under Fed. R. Civ. P. 60(b)(5) to reopen the judgment and reduce the previously awarded fees because  Biggins was no longer the prevailing party on the ADEA claim.   In  July  1996,  the district court resolved the matter in a detailed memorandum, pointing out that he was "intimately familiar" with the case. The district judge agreed with the Hazens that the fee award resulting from the first trial should be reexamined, since  one  predicate (the ADEA award) had now been undone. See Mother  Goose  Nursery  Schools, Inc. v. Sendak, 770 F.2d 668, 676 (7th Cir. 1985), cert. denied, 474 U.S. 1102 (1986). But the district judge disagreed with the Hazens that a drastic reduction was warranted. He concluded that subtracting the -20- -20- ADEA claim from the first trial would not have substantially reduced  the  amount of time needed to prepare and try the ERISA claim on which Biggins had conclusively prevailed. He ruled that a 20 percent reduction was warranted and awarded 80 percent of the original $207,000 figure to cover the original trial. The  district  court declined to alter the panel's award of almost $72,000 for the first appeal; that appeal, it will be remembered, had resulted in affirmance of the ADEA and ERISA awards,  but  the  ADEA  award had later been undone. The district court  said  that this court had likely considered the matter of a  reduction  when it remanded for a new trial, and in any case, that award was the court of appeals' business. Accordingly,  the  district court entered a revised judgment covering  the  entire attorney's fees award in both courts. The total is about $237,700, apart from costs. It is from this judgment that the Hazens have now cross-appealed, objecting both  to  the  modesty  of  the 20 percent reduction in the district court fee and the refusal to reduce at all the amount awarded by this court for appellate work. The district judge's refusal to order more than a 20 percent reduction is easily sustained. Most of this case has focused throughout on a central event, Biggins' firing, in an effort to appraise the Hazens' reason or reasons; but motivation had to be discerned through examination of several -21- -21- controversies that had enveloped the parties and led up to the firing, including Biggins' other ventures and claim to stock ownership. A  trial  of  the firing and related background events would have been quite extensive, and probably pretty similar in contour, even if Biggins had brought only one of the two federal  claims.   Indeed,  the second trial was nominally limited to the ADEA claim, but its duration and breadth were considerable. The commonality of issues has already been noted, in the Hazens' favor, sustaining their evidence as to background matters in the second trial. In  all  events,  the  Hazens make no effort to show in detail that  the  20  percent  reduction understates the time savings from (hypothetically) eliminating the ADEA claim from the first trial. Instead, they rely mainly upon doctrine, namely, that where  a plaintiff has achieved only partial or limited success,  the  product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. . . . even where the plaintiff's claims were interrelated . . . .  Hensley v. Eckerhart, 461 U.S. 424, 436 (1983).  We  say  "mainly"  because  the Hazens also try to make use of Biggins' earlier attempt, in resisting a remand, to minimize the importance of the ERISA claim in the first trial. It is true  that  Biggins called the claim little more than "a blip on the screen" but, of course, the en banc court disagreed with -22- -22- him. Catching up counsel on past rhetoric is sometimes fair, but  not  in  the present situation where the blip argument was so clearly unsuccessful exaggeration. This brings us back to Hensley. Of course, it is sometimes  appropriate  to  discount for failed or non-compensable claims  where  they  cannot  be neatly segregated from a successful compensable one. But the district court did discount by 20 percent for the failed ADEA claim; and it took the original $207,000  award as already reduced to account for time spent on state claims that would not have been needed for the federal claims. The former adjustment is obvious; and if the latter assumption is an error, the Hazens have not shown it. Finally,  we  come  to  the  district court's refusal to reduce the award of almost $72,000 made by this court for the first appeal.   Biggins  says  that this award is no longer open because the Hazens did not ask for a reduction at the time of the remand;  the  Hazens say, we think with some justification, that such a reduction request would have been premature since the possibility remained that Biggins would still prevail on the ADEA claim at the second trial. But this court is not inclined to reopen its earlier $72,000 award. In theory, the Hazens have a claim that time spent on the first appeal as to the ADEA issue--among a considerable number of other issues--ought to be subtracted. But  one  may  doubt,  at  least here, whether much discernable cost -23- -23- is added by writing more pages in an appellate brief, to address one more issue with which counsel is already familiar after an extensive trial.  In  refusing  to  reopen  the earlier award, we also take into account two other factors: that the original panel earlier refused  to  enlarge  Biggins' award, despite his offer of further time  records, and that this panel has no intention of making a further award to Biggins for time he has just spent in defending  his  attorney's  fee judgment (although it too could be the  subject  of an award in this court's discretion). From our standpoint, this case is now over. Affirmed. -24- -24-