## WILLIAM DAVID POLLEN *vs.* AWARE, INC.

No. 99-P-1459.

Middlesex. December 17, 2001. - February 15, 2002.

Present: GREENBERG, MASON, & DOERFER, JJ.

*Corporation,* Stock, Valuation of stock. *Contract,* Employment, Implied covenant of good faith and fair dealing, Termination. *Employment,* Termination. *Damages,* Breach of contract. *Value.*

On a claim for breach of contract, the judge's findings were not clearly erroneous and he committed no error of law in determining that an employer had breached an incentive stock option agreement when it refused to allow an employee to exercise options he had been granted under the agreement. [827-830]

This court vacated that portion of a judgment arising from a judge's finding that an employer had breached the implied duty of good faith and fair dealing by attempting to retroactively terminate an employee's employment in order to deprive him of certain stock options, where the judge found that the employer had not, in fact, terminated the employee's employment on the date in question, and therefore, there appeared to be no basis for holding the employer liable for attempting to terminate such employment as of that date. [830]

In an action for breach of contract arising from an employer's refusal to permit an employee to exercise certain stock options it had previously granted to him, the judge's use of the price of the stock on the date the stock first traded, for purposes of determining the fair market value of the stock as of the date of the breach of the stock option agreement, was not clearly erroneous. [830-831]

CIVIL ACTION commenced in the Superior Court Department on August 1, 1996.

The case was heard by *Charles T. Spurlock,* J.

*Gordon P. Katz* (*Douglas W. Phillips* with him) for the defendant.

*Dale C. Schneider* for the plaintiff.

MASON, J. After a bench trial in the Superior Court, judgment was entered for the plaintiff, William David Pollen, on his

claims against the defendant, Aware, Inc. (Aware), for breaches of contract and of the implied duty of good faith and fair dealing, in connection with Aware's refusal to permit Pollen to exercise certain stock options it had previously granted to him. On appeal, Aware claims that the trial judge committed various errors both in his determination of liability and in his calculation of damages. We vacate the judgment on the count of the complaint alleging breach of the implied duty of good faith and fair dealing. We otherwise affirm the judgment.

*The undisputed facts.* We summarize certain facts from the judge's findings and uncontradicted evidence in the record. Aware has its offices in Bedford and is engaged in the business of developing and marketing telecommunications software, chipsets, and modems that increase the speed of data communications over conventional copper telephone lines. Howard Resnikoff was the founder and president of Aware.

In August, 1987, Novon Partners, Ltd. (Novon), a partnership affiliated with Aware, hired Pollen, who was then a full-time student studying mathematics at Harvard University, to assist in various research projects at Aware. (Through this arrangement, Pollen became an employee of Aware.) At that time, Novon and Pollen entered into an employee agreement providing, among other things, that Pollen would not divulge any of Aware's confidential information and, for a period of one year following termination of his employment with Aware, would not participate in any research in which Aware had engaged.

In July, 1988, Pollen purchased 111 shares of stock in Aware pursuant to the terms of a stock restriction agreement. In January, 1990, upon entering into an incentive stock option agreement with Aware, Pollen was granted options to purchase an additional 6,889 shares of stock in Aware at a price of $.95 per share. The written agreement provided that the options would vest at the rate of one thirty-sixth per month, and would be fully vested after three years. The agreement further provided that the options would become void upon the termination of Pollen's employment with Aware.

In or about May, 1990, Pollen, acting with Resnikoff's encouragement, left his full-time employment at Aware to pursue a Ph.D. degree in mathematics at Princeton University. At that

time, Aware granted Pollen a leave of absence and also, pursuant to a letter agreement dated May 17, 1990, engaged him as an "intermittent consultant in the area of wavelet-related mathematics." The letter agreement provided that, whenever he performed a task pursuant to the agreement, Pollen would be paid $240.00 a day and reimbursed for his reasonable expenses incurred in performing the task.

At the time Pollen commenced his leave of absence, Aware's stock option plan defined the term "employee" as including "independent consultants and others that provide services to [Aware]." Accordingly, as a result of the parties' arrangements, Pollen's stock options continued to vest while he pursued his degree at Princeton. The options became fully vested in or about January, 1993.

In January, 1994, Pollen interrupted his studies at Princeton and returned to live in the Boston area. Around this time Resnikoff invited Pollen to return to Aware and continue his research there. In a letter to Resnikoff dated March 21, 1994, Pollen declined this offer, stating that, "I am not up to being able to do Ph.D. level work at this time," and, "I simply cannot afford to work for free under any circumstances."

In May, 1994, Robert Mosher, who was Aware's chief financial officer, sent Pollen a letter stating that Aware could not continue his leave of absence indefinitely and that, accordingly, his leave of absence and stock options would be terminated unless he returned to work at Aware on or before May 31, 1994. Mosher sent a similar letter to another employee who was on a leave of absence at this same time.

In response to Mosher's letter, Pollen met with Resnikoff prior to May 31, 1994, and agreed to return to Aware and perform some research work on an unpaid basis. Thereafter, Mosher sent Pollen a further letter, dated June 20, 1994, stating that, as he was "still considered to be on a leave of absence," his 1987 employment agreement was "still binding" on him.

In accordance with his latest agreement, Pollen performed unpaid research work at Aware through June and part of July, 1994. He then left the company and, in or about January, 1995, he re-enrolled at Princeton to pursue his Ph.D. studies. In March, 1995, Aware removed Pollen's name from a list it was maintain-

ing that showed those Aware employees owning stock options, but Aware did not notify Pollen that it had done so.

In May, 1996, Pollen received a notice to Aware's shareholders indicating that Aware was planning an initial offering of its stock to the public at a price between $10 and $12 per share. In response to this memorandum, Pollen sent a letter dated June 4, 1996, to John Walsh, who was then Aware's chief financial officer, stating that Pollen was "exercising [his] 6,889 Aware common stock options at a price of $0.95 each," and enclosing a check for $6,544.55. Pollen subsequently received a response from Aware's counsel, dated June 25, 1996, stating that, "[y]our leave of absence status and your stock options were among those terminated in early 1995," and that, "I must return to you your check for $6,554.55 as your stock options no longer exist."

Aware's initial public stock offering thereafter occurred on August 9, 1996. The stock was offered at a price of $10 per share and closed at $14.75 per share on the day of the offering.

*The trial.* Pollen testified at trial that he had never been notified either orally or in writing that his leave of absence had been terminated and, hence, he had understood that his options had continued to be valid through June, 1996, when he attempted to exercise them. Pollen further testified that he could have exercised the options in May, 1994, when he received Mosher's letter, but he had understood that his leave of absence would be continued in exchange for his agreement to return to Aware during the summer of 1994 and perform work on an unpaid basis, and hence there was no need to exercise the options at that time.

Resnikoff testified, on the other hand, that he had orally informed Pollen in July, 1994, that his temporary return to work had been unsuccessful and, hence, his leave of absence and ongoing employment relationship with Aware were being terminated as of that time. Resnikoff further testified that he had explained to Pollen prior to his return to work that the company's whole purpose in inviting him to return was to determine whether he could still contribute to Aware's ongoing projects and that, if he did not demonstrate that he could do so, then his employment with Aware would be terminated.

*Discussion.* We accept the judge's findings of fact unless

"clearly erroneous." *Kendall* v. *Selvaggio*, 413 Mass. 619, 620 (1992). His legal conclusions drawn from those facts, however, are reviewed de novo. See *id.* at 621. See also *Bowman* v. *Heller*, 420 Mass. 517, 522 n.6 (1995).

1. *Breach of stock option agreement.* The judge concluded that Aware had breached its stock option agreement with Pollen by refusing to allow him to exercise his options in June, 1996, because the judge found that, as of that time, Pollen remained an employee of Aware (as defined in the stock option plan) and hence, under the agreement, he retained the right to exercise the options. In reaching this result, the judge explicitly rejected Resnikoff's testimony that he had notified Pollen in July, 1994, that Pollen's status as an employee was being terminated. The judge found that Aware had presented "no writing or credible testimony" to evidence its alleged termination of Pollen's employment in July, 1994, or at any other time.

Aware does not dispute that the judge could properly find that it had failed to notify Pollen either in July, 1994, or at any other time, that his leave of absence with Aware was being terminated. Nevertheless, citing *Jackson* v. *Action for Boston Community Dev., Inc.*, 403 Mass. 8, 9 (1988), Aware contends that it could terminate Pollen's employment without giving him any such notice, and that it had in fact done so in March, 1995, when it removed his name from its list showing the persons owning valid stock options. Aware further contends that, by rejecting its evidence that it had terminated Pollen's employment in March, 1995, the judge improperly placed the burden on it to prove that Pollen was not its employee as of June 4, 1996, rather than require Pollen to prove that he was Aware's employee as of that date.

Aware's reliance on *Jackson* v. *Action for Boston Community Dev.*, *supra*, is misplaced. In *Jackson*, the Supreme Judicial Court stated that where, as here, a person is employed under a contract having no definite term, the person is employed "at will" and either party may terminate the contract "without notice, for almost any reason or for no reason at all." *Ibid.* It appears from the context, however, that the court used the word "notice" in *Jackson* in the temporal sense of *prior* "notification" or "warning," rather than in the absolute sense of

notification. See Webster's Third New Intl. Dictionary 1544 (1993). Thus, in each of the Massachusetts cases the court cited on this point in *Jackson*, as well as in *Jackson* itself, the employer had not purported to discharge an employee without notifying the employee either orally or in writing what it was doing. Rather, the employer had either discharged or taken some other action against the employee without prior warning. See *Campion* v. *Boston & Me. R.R.*, 269 Mass. 579, 580 (1930); *Fenton* v. *Federal St. Bldg. Trust*, 310 Mass. 609, 612 (1942); *Cort* v. *Bristol-Myers Co.*, 385 Mass. 300, 302 (1982); *Jackson* v. *Action for Boston Community Dev., Inc.*, *supra* at 9-10.

We therefore reject Aware's claim that it could effectively terminate Pollen's employment without actually notifying Pollen that it had done so. In the absence of any evidence that Pollen had become incompetent or otherwise unavailable, or had affirmatively renounced or taken some action inconsistent with his leave of absence, such notice was required in order for the termination to be effective. See, e.g., *Emerson* v. *Ackerman*, 233 Mass. 249, 252 (1919) (contract to pay commissions for indefinite term could be terminated "upon reasonable notice to the plaintiff"); *Phoenix Spring Bev. Co.* v. *Harvard Brewing Co.*, 312 Mass. 501, 506 (1942) ("The agreement between the parties must be construed as one that was terminable at will by either party upon reasonable notice"). See also *National Labor Relations Bd.* v. *Pacific Gamble Robinson Co.*, 438 F.2d 112, 113 (9th Cir. 1971) ("[I]n order for an employer's termination of an employment relationship to be effective, it must be communicated to the employee by some affirmative action on the part of the employer"). Contrast *Bodmer* v. *Police Mut. Aid Assn.*, 94 Utah 450, 456 (1938) (intent to discharge employee need not be communicated to employee where it is impossible to do so).

We also reject Aware's accompanying claim that the judge improperly shifted the burden of proof in this case. The judge did not relieve Pollen of any burden he should have borne or place on Aware any burden it should not have borne. Rather, the judge accepted Pollen's testimony that he had not been given any notice that his leave of absence was being terminated, and rejected Aware's contrary evidence (in the form of testimony by

Resnikoff) that it had in fact provided notice to Pollen that his leave of absence was being terminated. As the finder of fact, the judge was empowered to make such credibility determinations.

Aware further contends that, in any event, in making his findings the judge failed to give due consideration to the fact that, as of July, 1994, the leave of absence granted to Pollen was no longer serving any purpose since Pollen had demonstrated, by failing to make any progress on the work provided to him by Resnikoff at that time, that he was no longer capable of performing useful work at Aware. More specifically, Aware claims that "[w]hether or not Dr. Resnikoff informed Pollen during the summer of 1994 that his leave of absence had terminated, the uncon[tradicted] evidence at trial clearly showed that there was no longer any purpose in continuing Pollen's leave of absence after that time." Aware further claims that the parties showed by their conduct after July, 1994, that they mutually understood that the leave of absence had come to an end. Aware points particularly to its failure to recall Pollen for any further projects after July, 1994, and also to electronic mail (e-mail) Pollen sent to Resnikoff in the spring of 1995, indicating an interest in pursuing a career outside of mathematics.

In fact, Resnikoff failed to describe even what the work was that he had assigned to Pollen in June and July, 1994, let alone how Pollen had failed to perform the work satisfactorily. Pollen, on the other hand, testified that after he completed his work at Aware in the summer of 1994, he re-enrolled at Princeton to continue his Ph.D. studies in mathematics. Accordingly, the purpose of the leave of absence had not been frustrated as of July, 1994. Rather, the purpose of the leave continued to the same extent as it had before.

Moreover, while Pollen expressed some frustrations in his e-mails to Resnikoff regarding Pollen's existing situation, he did not indicate that he had abandoned his career in mathematics or that he understood that his leave of absence from Aware had been terminated. Both Pollen and Resnikoff also testified that in June, 1996, when Pollen attempted to exercise his stock options, Resnikoff actually helped Pollen draft his letter purporting to do so. Resnikoff's conduct thus tended to confirm, rather than contradict, Pollen's contention that his leave of absence

had not been terminated as of the time he attempted to exercise his stock options.

We therefore conclude that the judge's findings were not clearly erroneous and that he committed no error of law in determining that Aware had breached the incentive stock option agreement in June, 1996, when it refused to allow Pollen to exercise the options he had been granted under the agreement.

2. *Breach of implied duty of good faith and fair dealing.* The judge also found that Aware had breached the implied duty of good faith and fair dealing by "attempting to retroactively terminate the plaintiff" in order to deprive him of his stock options. The judge apparently based this finding on the letter that Aware's counsel sent to Pollen in June, 1996, notifying him that he could not exercise his stock options because his leave of absence status had been terminated in early 1995.

Since the judge found that Aware had not terminated Pollen's employment in March, 1995, there would appear to be no basis for holding Aware liable for attempting to terminate such employment as of that date. Contrast *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 104-105 (1977); *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. 659, 672 (1981). We will accordingly vacate that part of the judgment relating to count 2 of Pollen's complaint, which alleges breach of the implied duty of good faith and fair dealing, and direct that judgment shall enter for Aware on that count.

3. *Damages.* The judge calculated Pollen's damages by multiplying the number of his options, 6,889, by $14.75, the price at which Aware's stock closed on August 9, 1996, the first day of its public trading, and then deducting the amount Pollen was required to spend to exercise his options, $6,544.55. Aware contends that this methodology was erroneous, and that the judge was required to use the fair market value of Aware's stock as of June 4, 1996, the date Aware breached the stock option agreement, rather than as of August 9, 1996, the date the stock first traded.

Aware's argument overlooks the fact that, as of June 4, 1996, there was no public market for Aware's stock and, hence, the August 9, 1996, price was the best available indicator of its fair market value as of June 4, 1996. In these circumstances, the

judge's use of the August 9 price for purposes of determining the fair market value of Aware's stock as of June 4 was not clearly erroneous. We therefore will not disturb the judge's calculation of damages. See *Sarrouf* v. *New England Patriots Football Club, Inc.*, 397 Mass. 542, 550-551 (1986); *Chokel* v. *First Natl. Supermarkets, Inc.*, 421 Mass. 631, 641 (1996).

*Conclusion.* So much of the judgment as regards count 2 of the complaint, alleging breach by Aware of the implied covenant of good faith and fair dealing, is vacated, and judgment shall enter for the defendant on that count. In all other respects, the judgment is affirmed.

*So ordered.*