[870 NYS2d 1]

EDWARD A. KAMINSKY, Appellant, v HERRICK, FEINSTEIN LLP et al., Respondents.

First Department, December 18, 2008

## APPEARANCES OF COUNSEL

*Brian J. Isaac*, New York City, and *Schwartz & Ponterio, PLLC*, New York City (*Matthew F. Schwartz* of counsel), for appellant.

*Herrick, Feinstein LLP*, New York City (*Susan T. Dwyer* and *Jennifer Smith Finnegan* of counsel), for respondents.

## OPINION OF THE COURT

Tom, J.P.

In this action for legal malpractice, plaintiff claims that his attorneys' failure to offer sufficient expert testimony concerning the valuation of his damages resulted in an inadequate arbitration award. However, plaintiff fails to offer any viable legal basis upon which the arbitration panel could have reached a substantially different result. Thus, plaintiff cannot establish that the outcome of the proceedings would have been more favorable but for defendants' asserted failure to present evidence, and the complaint must be dismissed.

This dispute has its origins in two identical verbal agreements entered into by nonparty Spencer Segura with plaintiff and James Agate, under which each was to receive 5% of Segu-

ra's $2 million interest in NextLevel Communications, a telecommunications company, for an investment of $100,000. Segura held his stake in NextLevel by virtue of his 20% interest in Spencer Trask Investors, LLC which, according to the complaint, is a special purpose entity formed to purchase an ownership interest in NextLevel. The shares were ultimately distributed in an initial public offering (IPO) consisting of Next-Level stock and accompanying warrants.

Plaintiff discussed his proposed investment in NextLevel with Segura on a number of occasions in the year and a half since their verbal IPO agreement was made. Plaintiff asserts that Segura reneged on the deal in mid-October 1999, refusing to accept plaintiff's tender of a $100,000 check. Instead, Segura proposed that plaintiff accept a cash settlement together with the right to purchase an unspecified amount of shares at the IPO price in exchange for his consent to rescind their agreement.

Plaintiff declined this and other proposed settlement offers and instituted an action on the verbal agreement. He retained defendant Herrick, Feinstein LLP, a firm that had formerly employed him as an associate, to represent him. The firm commenced an action in Supreme Court in early November 1999 seeking $5 million in damages. It named Segura and Spencer Trask Securities as defendants and stated causes of action for breach of contract and specific performance. The NextLevel IPO took place on November 10, 1999. The complaint alleges, "Shortly after the IPO, plaintiff's investment in Next Level would have been worth tens of millions of dollars. Segura offered to settle the case for approximately $3.25 million and plaintiff rejected the offer."

Several months later, it became clear that Segura had also reneged on his agreement to sell 5% of Investors' stake in Next-Level to James Agate, with the result that Agate sought to join in plaintiff's lawsuit. Herrick, Feinstein, LLP filed a similar complaint on behalf of Agate in late February 2000, and Supreme Court later consolidated the actions. In late 2000, confronted with a motion by Segura to compel arbitration under the terms of the brokerage agreements signed by plaintiff and Agate as clients of Spencer Trask Securities, plaintiff consented to have the matter heard by a National Association of Securities Dealers (NASD) arbitration panel.

The arbitrators conducted extensive hearings, amassing a record of some 4,839 pages. Because Segura did not dispute the ex-

istence of his verbal agreements with Agate and plaintiff, the arbitration primarily concerned the determination of damages sustained as a result of the prospective investors' loss of the opportunity to participate in the NextLevel IPO. Segura took the position that damages should be assessed as of the time of breach, that is, on a pre-IPO basis; plaintiff sought damages based on the price at which NextLevel shares actually traded, that is, on a post-IPO basis. Thus, on plaintiff's direct case, his expert calculated damages based on the market price of NextLevel stock on two alternative dates—February 9 and May 10, 2000. After Segura presented his own expert, who testified that plaintiff would not have been able to liquidate his NextLevel stock and warrants on those dates due to various restrictions barring their sale, plaintiff sought to present a rebuttal witness to testify concerning the use of option strategies to overcome the transfer restrictions. The arbitration panel refused to hear from the proposed witness, noting that plaintiff had the opportunity to present such evidence on his case-in-chief and during cross-examination of Segura's expert witness. In August 2003, the panel issued an award in favor of plaintiff and Agate, directing Segura to pay $294,000 in compensatory damages and $50,000 in punitive damages to each.

Plaintiff and Agate, unhappy with the amount assessed as damages, commenced a special proceeding challenging the award on the ground of arbitral misconduct (CPLR 7511 [b] [1]), asserting that by precluding testimony from his proposed rebuttal witness, the arbitrators had refused to hear pertinent and material evidence. Supreme Court denied the petition and confirmed the award (4 Misc 3d 1019[A], 2004 NY Slip Op 50963[U] [2004, Cahn, J.], affd 26 AD3d 188 [2006]).

Supreme Court based its ruling on procedural due process grounds, reasoning that the petitioners had not established that they were "prejudiced by corruption, fraud, misconduct, partiality or an abuse of power by the arbitrator" (2004 NY Slip Op 50963[U] at *4, citing CPLR 7511 [b]). The court noted that the petitioners had been on notice during the pendency of the case and throughout the arbitration hearings of the position taken by Segura that damages should be calculated on the basis of NextLevel's pre-IPO valuation on the date of breach. Instead of addressing this issue on their direct case, the court observed, the petitioners "gambled on the Panel adopting their post-breach damage analysis" (id. at *6). Finally, the court found a failure to demonstrate that the proposed testimony was mate-

rial and necessary, rather than merely "intended to bolster testimony and issues that had already been raised during petitioners' case-in-chief" (*id.*). The court concluded that a full and fair opportunity to put in a case had been afforded and that no misconduct by the arbitrators had been shown.

This Court affirmed the decision, noting:

> "Petitioners failed to meet their burden of showing, with clear and convincing proof, that the arbitrators' refusal to hear the rebuttal expert witness constituted misconduct by preventing them from eliciting pertinent and material testimony in this hearing which consumed 24 days over a 15-month period. Petitioners could have called this witness during their case in chief. Rebuttal testimony cannot be utilized simply to challenge the credibility of another witness, namely, respondent's expert" (26 AD3d at 189 [citations omitted]).

Having failed to prevail against Segura in arbitration, this litigation against counsel ensued. Agate brought an action sounding in legal malpractice in early 2005, and plaintiff commenced the within action over a year later. Plaintiff's verified complaint seeks compensatory and punitive damages for legal malpractice, treble damages for violation of Judiciary Law § 487, and rescission of the retainer agreement under a theory of economic duress. The complaint names Herrick, Feinstein LLP, partners Arthur G. Jakoby, Harvey S. Feuerstein and Susan T. Dwyer, and the members of the firm's managing committee (collectively, Herrick) as defendants. The complaint blames Herrick, in the first cause of action, for the failure to present a sufficient direct case before the NASD arbitration panel "to establish the full measure of the damages suffered by plaintiff as a result of Segura's breach." The second cause of action alleges that Herrick engaged in a "pattern of deceitful or collusive conduct" by failing to disclose information obtained from Agate that would have caused plaintiff to withdraw his consent to the firm's joint representation of their interests and seeks treble damages under Judiciary Law § 487. The third cause of action asserts that plaintiff was coerced into entering into a retainer agreement whereby he was obligated to pay Agate's legal fees and seeks rescission of the contract. The complaint demands compensatory damages of not less than $25 million on the first and second causes of action and $1.2 million on the third cause of action, together with punitive damages of $10 million on each cause of action.

Herrick brought a pre-answer motion to dismiss the second and third causes of action on the record (CPLR 3211 [a] [1], [7]), which Supreme Court granted. Herrick answered and immediately brought this motion for summary judgment seeking dismissal of the remaining malpractice cause of action. The firm argued that it had presented ample evidence of plaintiff's damages, including the availability of option strategies to realize his gains from the price appreciation of NextLevel stock as well as expert testimony concerning the pre- and post-IPO value of his interest in the corporation. Supreme Court, in the order appealed from, granted the motion. Invoking the doctrine of stare decisis, the court noted that the action is predicated on the same facts as the attorney malpractice claim advanced by Agate and adhered to the same findings it made upon granting Herrick's motion for summary judgment dismissing Agate's complaint. Specifically, the court found that plaintiff, like Agate, "cannot prove any malpractice by Herrick proximately caused him any injury," and that the record fails to support the suggestion that the arbitration award would have been greater had representation been provided by other counsel (2008 NY Slip Op 30127[U], *6).

The court, in dismissing Agate's complaint, also seems to have applied the doctrine of collateral estoppel, holding that Justice Cahn's ruling in the special proceeding to vacate the arbitration award was dispositive of whether Agate, and by derivation plaintiff, had sustained any prejudice as a consequence of the arbitrators' rejection of testimony from the proposed expert rebuttal witness. While this Court agrees with Supreme Court's dismissal of plaintiff's complaint, our affirmance rests on different grounds. We note that the special proceeding decided only that the arbitrators' exclusion of further testimony by the expert witness was not prejudicial because plaintiff and Agate had been afforded the opportunity to present evidence of damages during their case-in-chief. The special proceeding neither addressed nor decided the issue of whether either prospective investor sustained any monetary loss as a result of his attorneys' failure to adduce additional testimony on the subject of the valuation of their respective interests in NextLevel. Thus, there is no identity of issue necessary to sustain application of the collateral estoppel doctrine (*Weiss v Manfredi*, 83 NY2d 974, 976 [1994]; *see also Katash v Richard Kranis, P.C.*, 229 AD2d 305, 306 [1996], *lv dismissed* 89 NY2d 981 [1997]).

Plaintiff's theory of recovery is that the arbitration panel awarded him an unreasonably low amount of damages because Herrick failed to introduce evidence to support an award based on the post-IPO value of his stock, i.e., the market price. Specifically, as alleged in the complaint, Herrick failed to adduce testimony from plaintiff's expert witness that despite statutory and contractual restrictions on the sale of stock following the IPO (a two-year statutory restriction for the common stock and a 180-day contractual "lockup period" for both the stock and warrants), plaintiff could have realized the market price for his shares, either in a private sale or through the use of stock options. Plaintiff contends that the firm "also failed to provide a pre-IPO expert valuation of [his] Next Level shares and warrants in case the panel adopted the 'date of breach' theory propounded by [Segura]," requiring an assessment of damages at a point in time before the stock began trading. Noting that Segura's breach of his agreement with plaintiff occurred *before* the NextLevel IPO took place, whereas it was not apparent that Segura had dishonored his agreement with Agate until several months *after* the IPO, the complaint intimates that Herrick's representation of Agate involved the firm in a conflict of interest. Plaintiff suggests that Herrick promoted Agate's interests over his own by seeking to have damages evaluated on a post-IPO basis, failing to present sufficient expert testimony concerning his expected return from the proposed investment at the time Segura breached the agreement.

Although the calculation of damages is central to this appeal, the extensive briefs submitted by the parties neglect to discuss what method the arbitrators should have employed to assess the damages sustained as a result of Segura's failure to deliver the NextLevel shares and warrants at the IPO price. Plaintiff fails to set forth any legal basis upon which the arbitrators might properly have awarded damages on a post-IPO basis, i.e., as determined by the price at which NextLevel shares traded during the lockup period or thereafter. Nor does plaintiff offer any theory under which the arbitrators might properly have rendered a higher award on a pre-IPO basis, i.e., as determined by plaintiff's expected return from his investment at the time the agreement with Segura was breached. Despite his ample briefs and the expansive record, plaintiff has not set forth a sufficient factual predicate demonstrating that Herrick "acted negligently, contenting [himself] with conclusory allegations which are legally insufficient to charge an attorney with

negligence and malpractice" (*Parker Chapin Flattau & Klimpl v Daelen Corp.*, 59 AD2d 375, 378 [1977]). In short, having failed to show why additional expert testimony would have afforded grounds for a higher award, plaintiff cannot establish that he sustained any loss as a result of his attorneys' alleged omissions, and dismissal of his claim of legal malpractice is required (*Jones Lang Wootton USA v LeBoeuf, Lamb, Greene & MacRae*, 243 AD2d 168, 182 [1998], *lv dismissed* 92 NY2d 962 [1998]).

Herrick argues that "we cannot know the specific reasons that led [the arbitrators] to reject for [*sic*] a post-IPO damage award and to adopt a pre-IPO damages award." However, the nearly 5,000-page record of the arbitration proceedings suggests otherwise. As plaintiff notes, the record contains testimony that arrives at precisely the same figure reached by the arbitrators in determining compensatory damages. While their award seems to be predicated, in part, on facts not in evidence, the record further indicates that the panel applied appropriate methodology in making the damages assessment.

Analysis appropriately begins with the observation that recovery for professional malpractice against an attorney requires that a client prove three elements: "(1) the negligence of the attorney; (2) that the negligence was the proximate cause of the loss sustained; and (3) proof of actual damages" (*Mendoza v Schlossman*, 87 AD2d 606, 607 [1982]). The cause of action requires the plaintiff to establish that counsel "failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession" and to meet the exacting standard that " 'but for' the attorney's negligence" the outcome of the matter would have been substantially different (*AmBase Corp. v Davis Polk & Wardwell*, 8 NY3d 428, 434 [2007]; *see N.A. Kerson Co. v Shayne, Dachs, Weiss, Kolbrenner, Levy & Levine*, 45 NY2d 730, 732 [1978]).

It is plaintiff's contention that the arbitration panel awarded him a mere $294,000 in compensatory damages rather than the "tens of millions of dollars" the shares were worth immediately following the IPO because of an alleged deficiency in the proof introduced by Herrick. While the arbitration panel did not state the grounds upon which it arrived at its award, the record of the proceedings provides insight into the panel's reasoning.

Plaintiff testified that, performing a rough calculation, he expected his position in NextLevel IPO shares to be worth about $500,000. Robert E. Conner, an expert in options trading, hedging and derivatives, also testified for plaintiff on the subject of

damages. During cross-examination of this witness, Segura's attorney noted that the number of shares plaintiff was to receive multiplied by the price contemplated in the IPO prospectus (approximately $10 a share) amounted to some $580,000. Subtracting plaintiff's investment of $100,000 yields an expected return of $480,000, directly supporting plaintiff's rough calculation of his expected return. Segura's attorney also pointed out that another of plaintiff's witnesses, Kevin Kimberlin of Spencer Trask, had testified that there was only a 70% likelihood that the IPO would actually take place. Therefore, counsel applied a 30% discount to the expected gross return, yielding a net of $420,000. Counsel then suggested that yet another 30% discount would be appropriate because Kimberlin had testified that the stock plaintiff was to receive consisted of restricted shares and warrants, meaning that sale was subject to the aforementioned contractual and statutory restrictions on transfer for a considerable period of time after the date of the IPO. Applying the second 30% discount yields a net return of $294,000, the exact amount awarded by the arbitrators as compensatory damages to both plaintiff and Agate.

This estimation of damages, presented by Stephen P. Younger, on behalf of Segura, drew prompt objections by plaintiff's attorney, Herrick partner Arthur G. Jakoby, who stated: "Mr. Kimberlin didn't testify that there would be a 30 percent discount. He said there's a chance the IPO wouldn't go off. That doesn't translate, by definition, to a 30 percent discount." Mr. Jakoby further objected that the estimation was "based on all these assumptions that Mr. Younger made up. Are they fact now or assumptions?"

Kimberlin testified that, as of the mid-October breach, the likelihood the IPO would take place was "60, 70 percent." However, the parties identify no statement by the witness endorsing the further 30% discount suggested by Segura's attorney as the appropriate share price adjustment to allow for security transfer restrictions. Thus, the award rendered by the arbitration panel seems to have been at least partially based on facts not in evidence. However, the propriety of the award is not at issue, any question of arbitral misconduct having been previously resolved in favor of confirmation. The only issue is whether the panel could have reached a different result had Herrick put in additional evidence concerning damages, as plaintiff maintains.

The parties do not discuss the proper legal foundation for an award of damages for breach of an agreement to deliver IPO

shares. However, Herrick points out that, during the arbitration proceedings, the firm "had presented the Panel with yet another option for pre-IPO valuation: the $59 price of NextLevel's stock on the opening day of the IPO" (citing *Pollen v Aware, Inc.*, 53 Mass App Ct 823, 762 NE2d 900 [2002]). The *Pollen* court merely decided that where an option contract to purchase shares at an initial offering had been breached, the use of the closing price on the first day of trading "was not clearly erroneous" and declined to disturb the trial court's determination of damages (53 Mass App Ct at 831, 762 NE2d at 905).

No New York case involving the assessment of damages for breach of a contract to deliver shares in an IPO at the initial offering price has been located. However, a number of cases have dealt with analogous situations, including *Boyce v Soundview Tech. Group, Inc.* (464 F3d 376, 387 [2d Cir 2006]), which concerned the breach of an option to purchase shares in a corporation about to go public. The Circuit Court began by observing, "It is settled Second Circuit law that in a breach of contract case, damages are calculated at the time of the breach" (*id.* at 384), the same criterion applicable under New York law (*see Simon v Electrospace Corp.*, 28 NY2d 136, 145 [1971]). The parties agreed that the contract was breached two months prior to the IPO and, consistent with New York law, that the plaintiff's damages were to be calculated by subtracting the exercise price of the option from the market price of the stock (*Boyce*, 464 F3d at 385). The Circuit Court stated that the actual value at which the shares traded subsequent to the IPO was not a proper measure of damages because that would involve the application of hindsight, contrary to New York law (*id.* at 386). Under comparable circumstances, the Fourth Department has held that a trial

> "court correctly rejected the valuation theories advanced by defendants' experts to the effect that the value should be based on the actual economic conditions and performance of [a] business . . . rather than on what knowledgeable investors anticipated the future conditions and performance would be at the time of the breach" (*Aroneck v Atkin*, 90 AD2d 966, 967 [1982], *lv denied* 59 NY2d 601 [1983]).

Applying these principles to the matter at bar, the appropriate time to assess the value of Segura's performance to plaintiff was the date his cause of action accrued, at the time of breach,

and the arbitrators properly rejected evidence of the value of NextLevel shares after trading began (*Simon*, 28 NY2d at 145). A post-IPO valuation was not warranted because, had plaintiff wished to own the shares and profit from their appreciation in subsequent trading, he could have purchased them in the open market. "The proper measure of damages for breach of contract is determined by the loss sustained or gain prevented at the time and place of breach . . . The rule is precisely the same when the breach of contract is nondelivery of shares of stock" (*id.* at 145). As the Court of Appeals went on to observe, the "cause of action should not and may not be converted into carrying a market 'call' or 'warrant' to acquire the stock on demand if the price rose above its value as reflected in his cause of action" (*id.* at 146). Thus, plaintiff was properly awarded the value of his shares insofar as it could be estimated on a pre-IPO basis; evidence of the subsequent market value of the shares was simply not germane, and the arbitrators properly declined to consider it.*

As to the pre-IPO valuation of the shares, Herrick interposed timely objections to the use of the 30% discounting suggested by Segura's attorney. Moreover, Herrick alerted the arbitrators to an alternative valuation method based on the closing price of the shares on the first day of trading, as suggested by the *Pollen* case, even though the measure of damages employed by the Massachusetts court is not consistent with New York law, as discussed in *Boyce* and *Simon*. In short, plaintiff has failed to establish any legal basis upon which a trier of fact might conclude that the asserted omission by Herrick caused him to receive an inadequate damages award; nor has he provided any grounds for his intimation that further expert testimony would have produced the award of greater compensatory damages. In the absence of an ascertainable loss, plaintiff has failed to set forth any basis upon which this Court might conclude that, "but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome" (*Zarin v Reid & Priest*, 184 AD2d 385, 386 [1992]), his underlying cause of action is therefore deficient, and his legal malpractice action must be dismissed (*Katash*, 229 AD2d at 306).

---

* Although Agate claims that his contract with Segura was not breached until months after the IPO, the latest date on which the breach could have occurred is the date of the offering, when performance of the contract to deliver IPO shares was due. Permitting the date of performance to be extended beyond the IPO date would effectively give the injured plaintiff "a market 'call' or 'warrant,' " in contravention of *Simon* (28 NY2d at 146).

As to the order brought up for review, plaintiff's claim of deceit, dismissed by Supreme Court at the pleading stage, is based on Herrick's failure to disclose its knowledge of an agreement between Segura and Agate "to cut Kaminsky out of the Next Level deal" and of a meeting of Agate with Segura's attorneys after the IPO for the purpose of assisting them "to prepare an affidavit saying there was no deal between Segura and Kaminsky." Plaintiff suggests that withholding information from a client and the favoring of one client over another is an independent basis to sustain a cause of action for legal malpractice (citing *Sitar v Sitar*, 50 AD3d 667 [2008]).

For purposes of a motion under CPLR 3211, it is assumed that there was a conflict of interest amounting to a violation of the Code of Professional Responsibility. In that case, "liability can follow where the client can show that he . . . suffered actual damage as a result of the conflict" (*Tabner v Drake*, 9 AD3d 606, 610 [2004]). Thus, it is clear that the absence of resulting damages is fatal to plaintiff's cause of action for legal malpractice (*Sumo Container Sta. v Evans, Orr, Pacelli, Norton & Laffan*, 278 AD2d 169, 170-171 [2000]).

As to plaintiff's cause of action under Judiciary Law § 487, he has not alleged "a chronic and extreme pattern of legal delinquency" (*Solow Mgt. Corp. v Seltzer*, 18 AD3d 399, 400 [2005], *lv denied* 5 NY3d 712 [2005]). Likewise, the inability to demonstrate consequential damages renders the cause of action deficient as a matter of law (*see Jaroslawicz v Cohen*, 12 AD3d 160 [2004]; *Havell v Islam*, 292 AD2d 210 [2002]).

Plaintiff's cause of action on the retainer agreement is predicated on economic duress. He claims that he was coerced into signing an agreement to assume responsibility for payment of Agate's future legal fees "by means of a wrongful threat precluding the exercise of his free will" (*Austin Instrument v Loral Corp.*, 29 NY2d 124, 130 [1971]). Specifically, he alleges that Herrick threatened to withdraw as counsel during the pendency of the arbitration proceedings. He concludes that the resulting prejudice to his case was sufficiently severe so as to overcome his ability to exercise free will, with the result that he was compelled to enter into the retainer agreement. Be that as it may, plaintiff implicitly ratified the agreement by waiting three years to seek its rescission, and he is barred from maintaining the cause of action (*see Matter of Guttenplan*, 222 AD2d 255, 257 [1995], *lv denied* 88 NY2d 812 [1996]; *Sosnoff v Carter*, 165 AD2d 486, 491-492 [1991]).

Accordingly, the judgment of the Supreme Court, New York County (Louis B. York, J.), entered January 17, 2008, granting defendants' motion for summary judgment dismissing plaintiff's first cause of action for legal malpractice and dismissing the complaint, and bringing up for review an order of the same court and Justice, entered February 27, 2007, which granted defendants' pre-answer motion for dismissal of plaintiff's second cause of action for damages under Judiciary Law § 487 and third cause of action for rescission, should be affirmed, without costs.

FRIEDMAN, BUCKLEY and CATTERSON, JJ., concur.

Judgment, Supreme Court, New York County, entered January 17, 2008, affirmed, without costs.