[979 NYS2d 326]

Milagros Cabrera, as Administrator of the Goods, Chattels and Credits of Raquel Gutierrez, Deceased, Respondent, v Salvador Collazo, Defendant, and Shelley B. Levy, as Executor of Cary M. Tanzman, Deceased, et al., Appellants.

First Department, February 4, 2014

148

**APPEARANCES OF COUNSEL**

*Housman & Associates, P.C.*, Tarrytown (*Mark E. Housman* of counsel), for appellants.

*Sanocki, Newman & Turret, LLP*, New York City (*David B. Turret* of counsel), for respondent.

**OPINION OF THE COURT**

Tom, J.P.

The remarkable defense proffered in this professional malpractice action is that an attorney who neglects a matter so that the statute of limitations runs against his client cannot be held legally accountable if the attorney happens to expire before the applicable limitations period. A cause of action for attorney malpractice requires: " '(1) the negligence of the attorney; (2) that the negligence was the proximate cause of the loss sustained; and (3) proof of actual damages' " (*Kaminsky v Herrick, Feinstein LLP*, 59 AD3d 1, 9 [1st Dept 2008], *lv denied* 12 NY3d 715 [2009], quoting *Mendoza v Schlossman*, 87 AD2d 606, 606-607 [2d Dept 1982]). The pleadings, as "[a]mplified by affidavits and exhibits in the record" (*Crosland v New York City Tr. Auth.*, 68 NY2d 165, 167 [1986]), contain allegations from which these elements can be made out and, thus, state a viable cause of action so as to survive a pre-answer motion to dismiss the complaint.

This legal malpractice action was brought by plaintiff Milagros Cabrera against defendants Shelley B. Levy, as executor of the estate of Cary M. Tanzman, Esq., and the Law Office of Cary M. Tanzman (collectively, the Tanzman defendants) and Salvador Collazo, who participated in plaintiff's representation. The Tanzman defendants brought a pre-answer motion to dismiss the complaint for failure to state a cause of action based on documentary evidence (CPLR 3211 [a] [1], [7]), particularly

Cary Tanzman's death certificate. The gravamen of their defense is that since the attorney-client relationship was terminated by Tanzman's death on October 24, 2010, Tanzman and his law firm cannot be held liable for any damages sustained by plaintiff as a result of the subsequent running of the statutory limitations period on November 4, 2010 (EPTL 5-4.1 [1]).

The wrongful death complaint alleges that plaintiff's decedent, Raquel Gutierrez, died on November 4, 2008 as a result of negligent care and treatment that was rendered by her doctors and nurses on or about October 26, 2008.[1] According to a retainer agreement dated "November 2008," Salvador Collazo was retained by decedent's brother, Porfilio Gutierrez, to commence a wrongful death action against the allegedly negligent individuals. It is not clear what work Collazo performed in the course of a year, if any, but under cover of a memorandum dated November 23, 2009, he sent the retainer agreement and medical authorizations to Tanzman. On March 11, 2010, Milagros Cabrera entered into a retainer agreement with the Tanzman law office, which included a fee-sharing provision stating that while Collazo would not be actively participating in the litigation, he "shall be participating in contacts between the Law Office of Cary M. Tanzman and the client." Also taking part in communications between the client and her lawyers was Mary Cabrera, plaintiff's daughter, who served as an interpreter and, according to her affidavit, attended all relevant meetings with defendants concerning decedent's estate.

Collazo later sent Tanzman a waiver of citation, renunciation and consent to appointment of administrator dated April 6, 2010 to expedite the issuance of limited letters of administration to plaintiff. Ten days later, Collazo was convicted of immigration and visa fraud in the United States District Court for the Southern District of New York. Mary Cabrera reported that at some point during the summer of 2010, both Collazo and Tanzman ceased responding to her attempts to contact them.

In late September, Tanzman filed a certificate of lateness with Surrogate's Court stating that "another attorney" had been contacted initially by the family and "did nothing on the file for

---

1. Disciplinary proceedings against the physician were instituted by the New York State Department of Health as a result of the treatment afforded to plaintiff's decedent and two other patients. After a hearing, the State Board for Professional Medical Conduct found that the doctor "exhibited a wanton disregard for basic medical practice," resulting in the revocation of his license to practice medicine in this state.

over a year." It was followed by a letter of September 30, 2010 asking that letters of administration be issued "as soon as is possible because there is a wrongful death matter associated with the above-named decedent and the Statute of Limitations will be expiring shortly." Surrogate's Court issued letters of limited administration on October 6. On October 14, Collazo was sentenced to 24 months' imprisonment on the federal immigration and visa fraud charges.[2] On October 24, Tanzman died at Memorial Sloan-Kettering Cancer Center, and the statute of limitations on plaintiff's wrongful death action expired 11 days later on November 4. No complaint was ever filed on behalf of plaintiff, and this action for professional malpractice ensued.

Other than a death certificate, there is no evidence concerning Tanzman's treatment or the course of his illness or when he was hospitalized. Nor is there any information about the nature of his law practice, beyond a letterhead that identifies three other attorneys as "of counsel." While it is clear from the letter dated September 30, 2010 that Tanzman was aware of the impending expiration of the statute of limitations against his client, it is unknown whether he took any steps to prepare a complaint for filing or whether he attempted to enlist the assistance of any other attorney including the attorneys of counsel in his firm.

According to the Tanzman defendants, neglect of a client matter by an attorney is not actionable if, as here, the attorney dies before the applicable limitations period runs against the client. Granted, it has been held that, for the purpose of determining the timeliness of a professional malpractice action, the action accrues "when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court" (*Ackerman v Price Waterhouse*, 84 NY2d 535, 541 [1994]). That a cause of action might accrue when the plaintiff actually sustains a loss, however, does not require the conclusion that an attorney is absolved of responsibility for any and all consequences of his neglect of the matter simply because it occurred *prior* to accrual of an actionable claim. Giving plaintiff the benefit of every possible favorable inference that can reasonably be drawn from the pleadings (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 634 [1976]), as we must on a pre-answer motion to dismiss (*see Arrington v New York Times Co.*, 55 NY2d 433, 442

---

**2.** Collazo was disbarred by order of this Court on January 11, 2011 based on the immigration fraud conviction (*Matter of Collazo*, 81 AD3d 220 [1st Dept 2011] [Judiciary Law § 90 (4) (b), (e)]).

[1982], *cert denied* 459 US 1146 [1983]), it appears that the inaction of counsel rendered the lapse of plaintiff's cause of action not merely possible—or even probable—but inevitable. On a motion directed at the sufficiency of the pleadings, the issue is whether the facts alleged fit within any cognizable theory of recovery, not whether the complaint is artfully pleaded (*see Hirschhorn v Hirschhorn*, 194 AD2d 768 [2d Dept 1993]), and the circumstances of this matter do not warrant dismissal of the action, at this juncture, as against the Tanzman defendants.

The extent of the duty imposed on the attorney to commence a timely action depends on the immediacy of the running of the statutory period, and no duty will be imposed where sufficient time remains for successor counsel to act to protect the client's interests in pursuing a claim (*see Golden v Cascione, Chechanover & Purcigliotti*, 286 AD2d 281 [1st Dept 2001] [defendant law firm relieved 2½ years before claim expired]). Where, as here, the expiration of the statute of limitations is imminent and the possibility that another attorney might be engaged to commence a timely action is foreclosed, there is a duty to take action to protect the client's rights.

Plaintiff is entitled to the inference that Tanzman died as a result of a chronic, terminal illness that he knew, or should have known, presented the immediate risk that his ability to represent his clients' interests might be impaired (*see Yuko Ito v Suzuki*, 57 AD3d 205, 207 [1st Dept 2008]). Here, defendants offered no evidence to elaborate on the cause or circumstances surrounding Tanzman's death. The submitted certificate of death for Tanzman merely states that Tanzman passed away on October 24, 2010 at Memorial Sloan-Kettering Cancer Center. The record suggests that plaintiff had cancer, and that his death may have been foreseeable, but the nature and duration of his illness cannot be determined from the death certificate and defendants' other submissions. Further, the record reflects that Tanzman was well aware that Collazo could not be relied upon to assist with plaintiff's representation. According to Tanzman's own statement, Collazo had done nothing on the matter in over a year, and Tanzman's retainer agreement assigned Collazo only a limited role in the case. In any event, as of September 2010, when Tanzman expressed his concern over the running of the statute of limitations in a letter to Surrogate's Court, Collazo had been convicted on a federal criminal offense and was facing sentencing and disbarment. Plaintiff is entitled to the factual inference that, at this late juncture and mindful of his ill.

health, Tanzman was aware of the need to prepare and file a complaint or to arrange for one to be filed as soon as the necessary letters of administration were received. The letters of administration were issued on October 6, 2010. Tanzman neither filed a complaint nor engaged another attorney to file one in his stead despite the availability of three attorneys associated with the firm as of counsel.

No discovery has been conducted and, in the absence of any evidence that the onset of Tanzman's final episode of illness was sudden, unanticipated and completely debilitating, the failure to seek assistance with the filing of a timely complaint represents a failure to protect plaintiff's interests. Further, plaintiff was not informed that the statute of limitations was about to expire so that she could protect her claim. Milagros Cabrera stated that in August 2011, nine months after the statute of limitations of plaintiff's cause of action had expired, Tanzman's law office mailed the case file to her in response to her efforts to learn the status of the matter. It was then that Cabrera for the first time learned that Tanzman was deceased. She later discovered, after consultation with another law office, that plaintiff's claims were time-barred and that Collazo was incarcerated. Finally, even if plaintiff had been put on notice to engage another attorney to initiate the wrongful death action, no means are identified by which the case file might have been obtained from the Tanzman firm to permit substitute counsel to file a timely complaint. In short, while the statute of limitations had not yet run at the time of Tanzman's death, nothing in the record suggests that there was any available means by which plaintiff might have preserved her wrongful death action. According the facts their most favorable intendment, at the time of Tanzman's death, the running of the statute of limitations against his client was a foregone conclusion because intervention by substitute counsel was not possible.

Expansion of the record on a "more embracive and exploratory motion for summary judgment" (*Rovello*, 40 NY2d at 634) may or may not disclose facts demonstrating that Tanzman was suddenly struck by a fatal and totally incapacitating episode of cancer rendering him unable to engage the services of another attorney to file a timely complaint on behalf of plaintiff or to communicate the necessity to do so. Thus, it would be premature to grant defendant's pre-answer motion and summarily dismiss the professional malpractice claim on the basis of the incomplete record before us (*id.*).

The cases relied upon in support of dismissal of the complaint state only that for the purpose of determining the limitations period for an action for professional malpractice, the statute of limitations begins to run on the date the client sustains injury (*e.g. McCoy v Feinman*, 99 NY2d 295, 301 [2002]; *Glamm v Allen*, 57 NY2d 87, 95 [1982]). These cases do not state that the severance of the attorney-client relationship, due to death of the attorney, prior to the accrual of the legal malpractice action deprives the client of any remedy for the inaction or negligence of the attorney which contributed to or resulted in the client's injury. The holding in these cases is not a bar to a legal malpractice claim against Tanzman for alleged failure, while he was alive, to notify plaintiff that he would be unable to file the summons and complaint in time or to enlist the attorneys in his firm to assist in this endeavor. This is especially so considering the short time period between the date of Tanzman's death and the expiration of the statute of limitations on plaintiff's underlying wrongful death action 11 days later.

Likewise, it has been held that the absence of any attorney-client relationship bars an action for attorney malpractice (*e.g. Fortress Credit Corp. v Dechert LLP*, 89 AD3d 615, 616 [1st Dept 2011], *lv denied* 19 NY3d 805 [2012] [allegedly faulty legal opinion relied upon was prepared by law firm retained by third parties, not by plaintiff]), as does the severance of the attorney-client relationship prior to any act of malpractice (*e.g. Clissuras v City of New York*, 131 AD2d 717 [2d Dept 1987], *appeal dismissed* 70 NY2d 795 [1987], *appeal dismissed, cert denied* 484 US 1053 [1988] [attorney withdrew after arranging for client's consultation with an actuary regarding her claim involving disputed calculation of pension benefits]). Similarly, such cases do not go so far as to hold that an attorney is absolved of liability for his part in permitting a statute of limitations to run against a client. To the contrary, in *Clissuras*, the Court expressly noted that counsel had withdrawn from representing the plaintiff "after advising her of the four-month Statute of Limitations" (*id.* at 719). Indeed, in *Mortenson v Shea* (62 AD3d 414, 414 [1st Dept 2009]), we noted that attorneys may be held liable for, inter alia, "neglect to prosecute an action." We stated that in pursuing an action on behalf of the plaintiff, the defendants created the impression that his claim remained viable and, under those circumstances, "defendants had a duty, at a minimum, to expressly advise plaintiff that a limitations period existed," including the need to take the necessary steps to

ensure that an action was timely commenced (*id.* at 415). Whether *Mortenson* establishes an affirmative duty to advise a client with respect to the running of a limitations period, which the parties dispute, is not a question requiring immediate resolution. What *Mortenson* signifies is that an attorney will be held accountable for any misconduct that contributes to damages incurred because a statute of limitations is allowed to expire against a client.

Accordingly, the order of the Supreme Court, Bronx County (Sharon A.M. Aarons, J.), entered October 26, 2012, which, to the extent appealed from as limited by the briefs, denied the Tanzman defendants' motion to dismiss the claim of legal malpractice pursuant to CPLR 3211 (a) (1) and (7), should be affirmed, without costs.

FRIEDMAN, FREEDMAN and FEINMAN, JJ., concur.

Order, Supreme Court, Bronx County, entered October 26, 2012, affirmed, without costs.