JAMES E. CAMPION *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.    December 6, 1929. — January 2, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Contract,* Construction, Of employment.    *Words,* "Permanent."

At a trial of an action of contract or tort against a railroad corporation, it appeared that the defendant published a bulletin inviting bids for a "permanent vacancy," as distinguished from a "temporary vacancy," in a signal tower "second trick"; that the plaintiff, then a "spare"

tower man with no regular assignment, "bid off" the vacancy and accepted the employment; and that two years later he was discharged for insubordination. The plaintiff contended that the discharge was without right. The judge ordered a verdict for the defendant. *Held,* that

(1) The defendant by inviting bids for a "permanent vacancy" did not agree to employ the plaintiff for life or for any definite period of time without regard to his fitness for the position: the contract could be terminated at the will of either party;

(2) The verdict properly was ordered.

CONTRACT OR TORT. Writ dated May 23, 1927.

In the Superior Court, the action was tried before *Gray,* J. Material evidence is described in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

*J. L. Sheehan,* for the plaintiff.

*R. W. Hall,* for the defendant.

CROSBY, J. This is an action to recover damages for an alleged breach of a contract for permanent employment. The declaration is in three counts, the first and second in contract, the third in tort.

The salient facts set forth in the bill of exceptions are that for several years before 1921 the plaintiff had been in the employment of the defendant; that during that year he was employed as a "spare" tower man; that later during the same year the defendant published a bulletin showing a "permanent" vacancy in the Wakefield Junction tower "second trick," which was "bid off" by the plaintiff; that in 1923 the plaintiff was suspended and afterwards discharged on the ground of insubordination. It is the contention of the plaintiff that his contract with the defendant was one of permanent employment and that the defendant had no right to discharge him. In support of his contention he introduced in evidence a "vacancy notice" so called. It is undisputed that on this notice the vacancy referred to was termed "permanent"; that the plaintiff "bid off" this vacancy and thereby accepted the position of tower man, second trick, at the tower of the defendant at Wakefield Junction; and that before this

time he had been a spare man with no regular assignment. It is admitted by the defendant that it did advertise and invite bids for "permanent vacancy" as distinguished from a "temporary vacancy."

The defendant by inviting bids for a "permanent vacancy" did not agree to employ a man for life or for any definite period of time without regard to his fitness for the position. Notwithstanding the plaintiff was hired to fill a "permanent vacancy," he could be later discharged by the defendant at any time it no longer desired his services.

The case at bar is plainly distinguishable from *Carnig* v. *Carr*, 167 Mass. 544, where there was evidence tending to show that if the plaintiff would give up his business and enter the service of the defendant, the latter would give him permanent employment at stipulated wages. In an action on the contract it was held that the defendant was not entitled to a ruling that the action could not be maintained. It was said by Morton, J. at page 547, "To ascertain what the parties intended by 'permanent employment,' it is necessary to consider the circumstances surrounding the making of the contract, its subject, the situation and relation of the parties, and the sense in which, taking these things into account, the words would be commonly understood. For it fairly may be assumed that the parties used and understood them in that sense. *Schuylkill Navigation Co.* v. *Moore*, 2 Whart. 477, 491. . . . The construction contended for by the defendant, namely, that it was for him to say whether he needed the plaintiff's services or not, would put the plaintiff entirely at the defendant's mercy, and, in view of the fact that the plaintiff was to give up his business to enter the defendant's employment, would be such an agreement as he could not reasonably have been expected to make. . . . On the other hand, it would be equally unreasonable to hold that the defendant could have intended to bind himself to employ the plaintiff so long as they both lived, regardless of his continuing in the enamelling business, or of the plaintiff rendering satisfactory service." See also *Kirkley* v.

*F. H. Roberts Co.* 268 Mass. 246, 252. In the case at bar there was no express agreement on the part of the defendant to employ the plaintiff for any definite period, nor can such an àgreement be implied. The contract could be terminated at the will of either party. *Harper* v. *Hassard,* 113 Mass. 187. *Adair* v. *United States,* 208 U. S. 161.

It is manifest that the invitation for bids to fill a "permanent vacancy," construing these words in the sense in which they were used and would be commonly understood, did not amount to an offer to employ for life, or for any definite term, a person who might accept the invitation and enter the employment of the defendant. The testimony of the plaintiff, to the effect that he understood when he took the position that he could not be discharged and that he could not leave the employment for any reason, cannot affect the legal right of the defendant under the terms of the employment to discharge him for cause or without cause. His testimony cannot be used to define the contract which is to be construed by its terms. *Gold* v. *Boston Elevated Railway,* 244 Mass. 144, 147, and cases cited.

The trial judge rightly allowed the defendant's motion for a directed verdict.

*Exceptions overruled.*