WARNER B. JACKSON *vs.* ACTION FOR BOSTON
COMMUNITY DEVELOPMENT, INC.

Suffolk.   April 7, 1988. — July 14, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Contract*, Employment. *Employment*, Termination.

Summary judgment was properly entered for the defendant employer in an
action brought by a discharged employee where the materials before the
judge, as bearing on the conduct and relations of the parties, did not
demonstrate the existence of any genuine issue of material fact as to
whether the terms of the implied contract of employment included the
provisions of a personnel manual, specifically the grievance procedures
therein, applicable to discharge. [13-15]

CIVIL ACTION commenced in the Superior Court Department
on June 11, 1981.

The case was heard by *Guy Volterra*, J., on motions for
summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*William P. Homans, Jr.* (*Norman W. Huggins* with him)
for the plaintiff.

*Richard P. Ward* (*Eleanor D. Acheson* with him) for the
defendant.

HENNESSEY, C.J. The plaintiff filed suit after he was dis-
charged from the defendant's employ. The plaintiff alleged
that he had entered into an employment contract with the de-
fendant, the terms of which were established by a "Personnel
Policies Manual" (personnel manual) distributed by the defend-
ant. The plaintiff sought recovery for breach of contract, alleg-
ing he was discharged in violation of the contract's terms
because his discharge was not effected in accordance with the
grievance procedure outlined in the personnel manual. The
parties filed cross motions for summary judgment. See Mass.

R. Civ. P. 56, 365 Mass. 824 (1974). A Superior Court judge allowed the defendant's motion, and denied the plaintiff's motion. We transferred the plaintiff's appeal to this court. We affirm.

As a general rule, where an employment contract, be it express or implied, contains no definite period of employment, it establishes employment at will. See *Fenton* v. *Federal St. Bldg. Trust*, 310 Mass. 609, 612 (1942); *Campion* v. *Boston & Me. R.R.*, 269 Mass. 579, 582 (1930). See also, e.g., *Pine River State Bank* v. *Mettille*, 333 N.W. 2d 622, 627 (Minn. 1983). Employment at will is terminable by either the employee or the employer without notice, for almost any reason or for no reason at all. *Id.* See *Cort* v. *Bristol-Myers Co.*, 385 Mass. 300, 305 (1982); *Fenton, supra* at 612; *Campion, supra* at 581. Of course, there are certain restrictions on an employer's ability to discharge an employee at will. See, e.g., *DeRose* v. *Putnam Management Co.*, 398 Mass. 205, 208-210 (1986) (liability for discharge in violation of public policy); *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 104-105 (1977) (obligation of good faith and fair dealing); G. L. c. 151B, § 4 (1986 ed.) (prohibition against discrimination in employment). See also *Sarni Original Dry Cleaners, Inc.* v. *Cooke*, 388 Mass. 611 (1983).

In this case the plaintiff contends that he is not an employee at will because he entered into an implied contract based on the personnel manual distributed by the defendant. The plaintiff contends that the personnel manual limited the manner in which he could be discharged. Thus, we must look to the circumstances as disclosed by the undisputed facts and by the affidavits accompanying the parties' motions for summary judgment, and determine whether a jury reasonably could conclude that an implied contract was formed based on the personnel manual's terms as alleged by the plaintiff. "A contract implied in fact may be found to exist from the conduct and relations of the parties." *LiDonni, Inc.* v. *Hart*, 355 Mass. 580, 583 (1969). See *Maynard* v. *Royal Worcester Corset Co.*, 200 Mass. 1, 4-5 (1908) (existence of contract is question for fact finder).

If not, award of summary judgment for the defendant and denial of summary judgment for the plaintiff were proper.

The circumstances, as established by the undisputed facts and the parties' affidavits, are as follows. The plaintiff became employed by the defendant in March, 1974. No written employment contract was executed, and the plaintiff does not argue that any oral express contract was formed. In March, 1975, the plaintiff was promoted to the position of supervisor of one of the defendant's neighborhood employment centers. In March, 1980, an employee supervised by the plaintiff complained that he was subjecting her to sexual harassment. An investigation ensued, and similar complaints were lodged by several employees supervised by the plaintiff, and by one job applicant the plaintiff had interviewed. Following the investigation, the plaintiff was informed, on or about April 18, 1980, that he was to be discharged for "gross misconduct; specifically, the sexual harrassment [*sic*] of female employees . . . ." The plaintiff denied the allegation of harassment.

By this time the plaintiff had retained counsel and through counsel requested "a hearing before the Grievance Committee of the A.B.C.D. Board of Directors" to review his discharge. This request was prompted by the personnel manual's grievance procedures set out in their entirety in the margin.[1] Nothing in the

---

[1] "GRIEVANCE PROCEDURES.

"Employee grievances shall be given prompt and fair consideration. An employee who claims that he has been treated unfairly or dismissed without due cause shall be provided with an opportunity to have the action reviewed by a Grievance Committee made up of members of the governing board after the following procedure has been complied with:

"1. The aggrieved employee must request in writing a meeting to discuss the grievance with his immediate supervisor and Department or Division Head who will attempt to resolve the situation.

"a. The request must be submitted to the Department or Division Head within five (5) working days of the alleged unfair treatment or dismissal.

"2. If the situation is not resolved at the Department or Division Head level, the aggrieved employee must submit in writing to the Personnel Director, a complete statement outlining the grievance.

"a. The statement must be submitted to the Personnel Director within five (5) working days of the decision of the Department or Division Head.

"3. The Personnel Director, either solely or as part of a Personnel Review Board appointed by the Executive Director, shall review the statement and

materials before the Superior Court judge indicates when or in what circumstances the plaintiff received a copy of the personnel manual. An affidavit on behalf of the defendant does, however, indicate that, at least since 1974, copies of the personnel manual "have been given to employees after they are hired." The plaintiff was informed that he must first follow the initial steps in the grievance procedure, i.e., to meet with his immediate supervisor and then to submit to the personnel director a statement outlining his grievance, prior to receiving a hearing before a grievance committee.

The plaintiff followed the initial steps, and his discharge was upheld by his immediate supervisor and by the personnel director. A grievance committee then was appointed by the defendant's board of directors. The committee held a number of meetings. In the initial meetings the committee interviewed the officials who had investigated the sexual harassment complaints, but not the complainants. The plaintiff was allowed to appear at a later meeting and again denied having sexually harassed employees. He was not informed of the complainants' identities, nor was he allowed to confront or cross-examine them. The committee recommended that the plaintiff's discharge be upheld, and "found that ABCD's personnel practices and policies had been honestly and fairly followed and that ABCD management had a reasonable basis for the actions taken, which actions were neither arbitrary nor malicious nor personally motivated." The committee also explicitly made "no finding as to the truth or falsity of the specific [sexual harassment] charges." The committee's recommendation that the plaintiff's discharge be upheld was adopted by the defendant's board of directors.

---

make a thorough investigation of the matter.

"a. If the decision of the Personnel Director or Review Board does not resolve the grievance, the aggrieved employee may request in writing a hearing before a Grievance Committee of the ABCD Board of Directors. The request must be submitted to the President of the ABCD Board of Directors within five (5) working days of the decision of the Personnel Director or Review Board.

"4. The Grievance Committee shall review the grievance and submit its findings to the Board of Directors."

A number of other circumstances also are established. First, the personnel manual's introduction states, "The purpose of this manual is to provide under one cover personnel policies and related instructions and information for the guidance of all divisions, departments, and units of Action for Boston Community Development, Inc. Policies may be changed from time to time as new conditions arise or experience suggests and if so, you will be notified as to the changes." Second, an affidavit submitted in support of the defendant's motion for summary judgment by its personnel director indicates that there was no negotiation with the plaintiff regarding his terms and conditions of employment; the plaintiff was not told that his employment could not be terminated at will; all the defendant's employees were hired on an at-will basis; and there never have been "negotiations with new employees over the policies in the [personnel] manual nor has any consideration been requested from any new employee in return for any personnel policies." Finally, the affidavit notes that the defendant had unilaterally and substantially changed the personnel policies' terms in the past, and that the affiant and the defendant's management "never [have] considered that the policies or guidance set forth in the Manual constitute part of an employment contract of any employee." [2]

An implied contract can be shown to exist from the circumstances of the case. Here, there is no argument concerning whether the parties were operating under an implied contract

---

[2] The plaintiff, in his brief, questions the propriety of relying on certain portions of this affidavit, contending that it "does not set forth 'such facts as would be admissible in evidence' and does not 'show affirmatively that [the affiant] is competent to testify to the matters stated therein.' Rule 56 (c) M. R. Civ. P. [365 Mass. 824 (1974)]." The plaintiff also argues that some of the statements are impermissibly conclusory. See *Madsen* v. *Erwin*, 395 Mass. 715, 721 (1985). We disagree. The affidavit recites that the affiant had been the defendant's personnel manager for thirteen years. In this capacity he had personal knowledge regarding the matters averred. Further, we accept some of the statements as merely establishing the affiant's view, as the defendant's agent, of the circumstances involved, and not as conclusively establishing the state of affairs urged. Finally, we note that the plaintiff did not move to strike the allegedly improper portions of the affidavit. See *id*.

of employment. They were. The question here is whether the terms of the personnel manual formed the basis of that contract, or, instead, the parties had created a simple employment at will.

In *Carnig* v. *Carr*, 167 Mass. 544, 547 (1897), involving an express contract, we noted that in determining a contract's terms "it is necessary to consider the circumstances surrounding the making of the contract, its subject, the situation and relation of the parties, and the sense in which, taking these things into account, the words would be commonly understood." Beginning with this view we held that, where an employee has left his own business at an employer's urging, to accept proffered "permanent employment" with the employer, the employee does not hold his new position at the pleasure of the employer. Instead, the employer is obliged to retain the employee so long as the employer has work available and the employee performs it satisfactorily. *Id.* A similar approach of reviewing the circumstances and relation of the parties can be taken in this case to determine if the terms of the implied contract include the provisions of the personnel manual.

We have recently held that, on proper proof, a personnel manual can be shown to form the basis of an express or an implied contract. *Hobson* v. *McLean Hosp. Corp.*, 402 Mass. 413, 415 (1988). A limited number of prior decisions have also touched on this issue. In *Mendez* v. *Trustees of Boston Univ.*, 362 Mass. 353, 355 (1972), the employer conceded that the "Faculty Manual" accompanying a one-page "Faculty Appointment Form" was part of the contract. In *Rhine* v. *International YMCA College*, 339 Mass. 610, 611, 614 (1959), we ruled that the nontenured plaintiff was not benefited by certain provisions contained in a "Faculty Personnel Policy." We did not explicitly rule on whether the policy, which accompanied the plaintiff's letter of appointment, constituted part of the employment contract. Finally, in *Decker* v. *Worcester Junior College*, 369 Mass. 960, 961 (1975), we noted that, if the college had adopted a "formal procedure [for faculty reappointments] and communicated it to its faculty, the college could be bound to the terms of that procedure." We concluded, however, that the record demonstrated only that a general policy

had been adopted, and no firm commitment to the faculty had been made. *Id.* See also *Garrity* v. *Valley View Nursing Home, Inc.*, 10 Mass. App. Ct. 822, 823 (1980) (terms of employee manual did form part of contract).

In this case, viewing the circumstances most favorably to the plaintiff, the most that can be said in his behalf is that he received the manual at some unknown time and continued to work for the defendant thereafter, and that on the plaintiff's discharge, the defendant adhered to, albeit imprecisely according to the plaintiff, the personnel manual's grievance provisions. We agree with the plaintiff that remaining with an employer after, or commencing employment upon, receiving an employee manual, can, in appropriate circumstances, supply the necessary consideration to incorporate the manual's terms into an employment contract. See *Simons* v. *American Dry Ginger Ale Co.*, 335 Mass. 521, 526 (1957). See also, e.g., *Southwest Gas Corp.* v. *Ahmad*, 99 Nev. 594, 595 (1983). We also agree that the defendant's adherence to the grievance procedures is some evidence of the existence of a contract based on the personnel manual's terms. Cf. *John P. Condon Corp.* v. *State Line Contractors, Inc.*, 353 Mass. 137, 141 (1967).

Courts have disagreed as to how clear an indication an employer must give in connection with distributing an employee manual before it may be found that the employer entered into a contract on other than a strictly at-will basis. Compare *Martin* v. *Capital Cities Media, Inc.*, 354 Pa. Super. 199, 220-222 (1986) (employment at will should be presumed in absence of clear statement in handbook to the contrary), with *Woolley* v. *Hoffmann-LaRoche, Inc.*, 99 N.J. 284, 309, modified, 101 N.J. 10 (1985) (unless manual contains prominent statement that no promises are made therein, a contract on its terms can be found). However, on review of all the circumstances here, and considering the relation of the parties, the conclusion is inexorable that no implied contract based on the personnel manual's terms existed. It is undisputed that the defendant retained the right to modify unilaterally the personnel manual's terms. This tends to show that any "offer" made by the defend-

ant in distributing the manual was illusory. See *Gill* v. *Richmond Co-Operative Ass'n,* 309 Mass. 73, 79-80 (1941); *Bernstein* v. *W.B. Mfg. Co.,* 238 Mass. 589, 590-591 (1921). The personnel manual's language that it is provided for "guidance" as to the defendant's "policies" is of the same import. It is also significant that nothing in the circumstances here reveals any negotiation over the terms of the personnel manual. Cf. *Carnig, supra* at 546 (negotiations lead to offer of permanent employment). Further, consistent with employment at will, no term of employment was stated in the personnel manual. See *Fenton* v. *Federal St. Bldg. Trust,* 310 Mass. 609, 612 (1942); *Campion,* 269 Mass. at 582. The plaintiff does not argue that any special attention was called to the manual by the defendant; there is no indication that the plaintiff signed the manual, or in any way manifested his assent to it or acknowledged that he understood its terms. See, e.g., *Garrity, supra* at 822 (employee required to sign manual); *Renny* v. *Port Huron Hosp.,* 427 Mich. 415, 425-426 (1986) (employee given page-by-page review of manual during orientation and signed acknowledgment of familiarity with its terms). In sum, in the circumstances of this case, we conclude that the conduct of the parties, and their relation, fell short of that which would allow a jury to decide reasonably that the parties had entered an implied contract based on the manual's terms.

*Judgment affirmed.*