Quinlan, J.
This action arises from the termination of the plaintiff Karen Marchant’s employment by the defendant Burlington Municipal Employees’ Federal Credit Union (“the Credit Union”) on March 19, 1997. The plaintiff alleges in Count I, breach of contract, in Count II, intentional interference with contract, in Count III, nonpayment of wages and Count IV, violation of G.L.c. 93, §102. The defendants deny the allegations. The defendants have moved for summary judgment on all Counts. The plaintiff opposes the motion and objects on the further grounds that discoveiy is not yet complete.
Background
The Credit Union’s members are employees of the Town of Burlington and others. Members of the Board of Directors are unpaid volunteers. The defendant Paul Christiansen is president of the Credit Union’s Board of Directors; the defendant Richard Howard is a director. The Credit Union has fewer than six employees. The plaintiff was employed by the Credit Union from April 13, 1987 through March 19, 1997 as its manager. She was not hired pursuant to a written contract. The Credit Union adopted Personnel Rules and Regulations (“Personnel Rules”) in December 1996. The plaintiff asserts that she was terminated because of her sex and in breach of her employment contract as embodied in the Personnel Rules and Regulations. She further asserts that her termination was orchestrated by two members of the Board of Directors, the defendants Christiansen and Howard.
Count I, Breach of Contract
The defendants assert that the plaintiff was an employee-at-will whose employment could be terminated “without notice, for almost any reason or for no reason at all,” Defendants’ Memorandum p. 9 citing Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 472 (1992), and the Personnel Rules did not form the basis of a contract express or implied. The plaintiff attended Board meetings during her employment. The minutes of the meeting of the Board on December 18, 1996 provide:
Mr. Howard presented the Board members with a rough draft for Personnel Rules and Regulations. He asked the Board to Review them and make comments or changes to them before the end of next week. Mr. Howard asked the Board to adopt the proposed rough draft as submitted, subject to change. Mr. DeMartinis moved to approve. Seconded by Mr. Danielson and unanimously approved.
Following the approval on December 18, 1996, there were no changes to the Personnel Rules approved by the Board. The Personnel Rules state that they were adopted January 1, 1997. According to the minutes of the June 25, 1997:
Mr. Curtin requested the Board Amend the minutes of the December 1996 meeting relative to the adoption of the Personnel Policy and Procedures. The minutes show they had been accepted and in fact, they have not. Mr. Curtin moved the December 1996 minutes be reflected to show that the Personnel Policy and Procedures as presented were never adopted by this Board. Seconded by Mr. DeMartinis and unanimously voted . . .
“A personnel manual may form the basis for an express contract.” O’Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 691 (1996) citing Jackson v. Action for Boston Community Development, Inc., 403 Mass. 8, 13 (1988). Terms included within a personnel manual may also be incorporated in the contract of employment by implication. O'Brien v. New England Tel. & Tel. Co., 422 Mass. at 692.
It is clear from the O’Brien decision, that a decision whether the terms of a personnel manual impose implied contractual obligations is fact intensive. No *251 one factor is controlling. Previously, in Jackson, the court had detailed various factors to be considered in deciding whether terms of an employee manual were impliedly incorporated in an employment contract. However, the court made it clear in O'Brien that it did not view the list of circumstances as a “rigid list of prerequisites" or conditions precedent. Rather, they were considered factors which may make a difference in making the decision. The court may look beyond the language in a manual to employment practices of the employer. Id. at 692-93. If“employees in general would reasonably conclude that the employer was presenting the manual as a statement of the conditions under which employment would continue” the terms may be implied as a part of the employment contract. Id.
The plaintiff, who bears the burden of proof on the issue, has submitted evidence which, if believed, would justify submitting the issue to the jury. The minutes of one meeting and the Personnel Rules themselves clearly demonstrate that they had been adopted. A later vote, after the plaintiffs termination, purports to show they were not adopted. These facts alone create an issue of material fact. The defendant asserts that the Personnel Rules were not distributed to employees. However, the plaintiff states that she was present when the Board voted to adopt the Personnel Rules and she was the person responsible for implementing those rules. The plaintiff was informed that she was informed she was terminated for insubordination as a result of a meeting on March 11, 1997, a portion of which was taped.[1] The defendants Howard and Christiansen attended that meeting. A special meeting of the Board was held on March 17,1997. The plaintiff did not attend. According to the minutes, the defendant Howard informed the Board of matters relating to the plaintiffs performance. Member Richard Griffin moved to terminate the plaintiff. Upon recommendation of counsel, no reason was given for the termination. The plaintiffs termination was approved by a vote of the Board upon motion of the defendant Howard. The Personnel Rules provide that disciplinary action may be indicated for failure of an employee to fulfill his/her responsibilities. The plaintiff denies that she was insubordinate and that she failed to fulfill responsibilities as an employee. The issue of compliance with the Personnel Rules is an issue of fact.
Summary Judgment is not appropriate on Count I.
Count II, Intentional Interference with contract
The plaintiff alleges that the defendants Christiansen and Howard intentionally interfered with her contract of employment with the Credit Union. To prevail on this claim, the plaintiff must prove that (1) she had an employment contract with the Credit Union, (2) each individual defendant knowingly induced the Credit Union to break the contract, (3) each individual defendant’s interference, in addition to being intentional, was improper in motive or means, and (4) she was harmed as a result. Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 476 (1992). “The improper motive or means required is ‘actual malice.’ See King v. Driscoll, 418 Mass. 576, 587 (1994); Boothby v. Texon, Inc., 414 Mass. 468, 487 (1993). Actual malice is any ‘spiteful, malignant purpose, unrelated to the legitimate corporate interest.’ Wright v. Shriners Hosp. for Crippled Children, supra at 476.” Shea v. Emmanuel College, 425 Mass. 761, 764 (1997). The plaintiff relies upon her age discrimination claim as sufficient to establish the element of malice. See Comey v. Hill, 387, Mass. 11, 20 (1982).
As noted above, there is a genuine issue of fact whether the terms of the Personnel Rules were incorporated into the plaintiffs contract of employment by implication and, if they were, whether the Credit Union breached the implied contract. There is evidence in the record that the defendants Christiansen and Howard participated in the termination.
With respect to the issue of actual malice, the plaintiff has referred to statements made to her about her maternity leaves by defendants Christiansen and Howard. She has also submitted the affidavit of a former employee of the Credit Union regarding statements made by the defendant Christiansen. The transcript of the meeting on March 11, 1997 reflect less than cordial relations between the plaintiff and defendant Christiansen. The meeting was ostensibly to discuss an employee who had resigned. It quickly turned to the plaintiff and her performance. She was questioned by Attorney Daniel Gibson and by defendants Christiansen and Howard. The defendant Christiansen stated at one point, “What is important is that things change around here. In my opinion, what you have done today is sufficient to terminate you, okay, what you have done and the way you’ve treated us . . .” He continued, “. . . I want to keep you but I want — the idea of this meeting is to make clear who is the boss here, who makes decisions and, if I- give a directive it’s to be obeyed, and if you have a disagreement with it I have no problem with you presenting it to the whole Board at a later date, to say that this is what it is and I don’t think that’s the way to do it. Okay, that’s the policy, that’s the way things should happen.”
There are genuine issues of fact which preclude summary judgment on Count II.
Count III Non-Payment of Wages
In Count III, the plaintiff alleges that the defendant Credit Union failed to pay her for accrued but unused vacation time in violation of G.L.c. 149, §148. In seeking summary judgment, the defendants’ argument is self-defeating. “Marchant’s attendance records demonstrate that she was miscalculating and misrepresenting her vacation time and personal days due to her for the length of her employment at the Credit Union.” The defendants further assert that the days were not cumulative. The plaintiff disputes and denies the allegation and states she was told her days *252 were cumulative. She also states that her calculations were the same as another employee and those calculations were approved by the Board.
There are genuine issues of fact which preclude summary judgment on Count III.
Count IV violation of G.L.c. 93, §102.
The defendants assert that the plaintiff is precluded from seeking relief pursuant to the Massachusetts Equal Rights Act, G.L.c. 93, §102, because G.L.c. 15 IB is the exclusive remedy for discrimination claims and because the Credit Union is exempt from the provisions of G.L.c. 151B because it has fewer than six employees. G.L.c. 151B does not apply to an employer with fewer than six employees. However, that does not mean an employer can discriminate with impunity. The plaintiff may proceed pursuant to G.L.c. 93, §102 since the Credit Union is not subject to G.L.c. 151B. See Green v. Wyman-Gordon Co., 422 Mass. 551, 557 (1996) (G.L.c. 214, §1C); Guzman v. Lowinger, 422 Mass. 570 (1996) (G.L.c. 214, §1C).
Order
For the foregoing reasons, the defendants’ Motion for Summary Judgment is DENIED.

The meeting was taped with the knowledge and consent of all participants. At one point, when the discussion turned to the plaintiff, the defendant Christiansen said “No, no, stop the tape!" The taping continued.