Gordon, Robert B., J.
Presented for decision is the Defendants’ Rule 12(b)(6) Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted. For the reasons which follow, the Court concludes that the defendants’ motion must be ALLOWED.
BACKGROUND
Plaintiff Gerda Sylvain has brought a breach of contract action against her erstwhile employer (hereinafter “Spaulding Rehabilitation”).[1] The gravamen of plaintiffs claim is that Spaulding Rehabilitation issued her an “Employee Handbook” which contained policies concerning workplace conduct and disciplinary action. The Complaint asserts that “[a] fair reading of [Spaulding Rehabilitation’s] employee handbook constitutes an alteration of the employment at-will relationship,” and charges the defendant with breaching that contract when it dismissed Sylvain from employment without utilizing any of the first three steps of its progressive discipline procedure.
The defendants’ have moved to dismiss on each of two alternate grounds. First, they maintain that, even indulging the facts in the manner most hospitable to the plaintiff, the allegations of the Complaint permit no fair inference that Spaulding Rehabilitation’s Employee Handbook constitutes an enforceable contract or otherwise modified the parties’ at-will relationship. Second, Spaulding Rehabilitation argues that, even if the terms of the Employee Handbook could be given contractual effect, the allegations set forth in the Complaint fail to demonstrate a breach of any of such terms.
FACTS[2]
Sylvain was a Certified Nursing Assistant employed by Spaulding Rehabilitation from April 2004 until her discharge in April 2012. Prior to her dismissal, Sylvain received consistently satisfactory performance reviews.
At some point during her employment, Sylvain received an Employee Handbook.[3] Forty-one pages in length, the Handbook contained a variety of personnel policies. One such policy was entitled “Corrective Discipline,” and provided in pertinent part as follows:
If your conduct interferes with the orderly and efficient operation of Spaulding Nursing & Therapy—North End, either through poor performance, poor attendance, or misconduct, corrective action will be taken to address the behavior. Corrective discipline usually proceeds in the following steps:
First Step—Counseling with written note
Second Step—Written Warning
Third Step—Final Written Warning or Disciplinaiy Suspension
Fourth Step—Discharge
The progressive approach may be modified based on the facts and circumstances of each case. Some rule infractions may be so serious as to cause immediate discharge.
(Employee Handbook, atp. 15.)
A related policy set forth in the Employee Handbook (“Grievance Process”) provided in relevant part as follows:
You always have the right to present a matter of concern regarding corrective action... to your supervisor and/or department head and have it considered on its merits. The presentation of a concern will have no adverse impact on your employment status. All concerns will be promptly reviewed and answered.
The formal grievance procedure can only be applied to final warnings, suspensions or discharges. This in no way prevents informal problem solving. A concern should be discussed promptly so that it does not become a lingering problem . . .
Discharged employees, if grieving, must begin the process at Step II described below.
Staff who do not initiate a grievance within 10 calendar days of knowledge of the facts related to the grievance forfeit the right to grieve the matter.
(Employee Handbook, at pp. 15-16.) The Grievance Process goes on to specify four discrete levels of review that a grieving employee can bring to bear on her claim. Step I calls for a discussion with the employee’s immediate supervisor, who is required to respond to the grievance within five working days. If the employee is not satisfied, *355 she may take the grievance to Step II. Step II of the process entails presenting the grievance in writing to the employee’s department head, who must hold a grievance meeting and respond in writing within five working days. If the employee remains dissatisfied, she may advance the grievance to Step III. At Step III, a representative of the Human Resources Department will review the grievance and provide a written response within 14 days of the conclusion of the Department’s review. Finally, if the employee remains dissatisfied with the decision of Human Resources, she may present the grievance in writing to Spaulding Rehabilitation’s Executive Director. This step concludes the internal grievance process. (Employee Handbook, atpp. 16-17.)
The Grievance Process does not state explicitly that utilization of the procedure is required, failing which the employee will forfeit rights to bring a contract action in court. The Grievance Process does suggest, however, that employees were meant to exercise rights thereunder in a prompt, informal and non-litigious manner: “This process is designed to assure a fair and impartial review of your case in an informal, non-judicial atmosphere.” (Id. at 17.)
On August 17, 2012, Sylvain became involved in a workplace dispute with a co-employee named Gimina Arthur. What began as a verbal quarrel in a patient room over a staffing request escalated into a physical altercation, with Arthur punching and kicking Sylvain and Sylvain grabbing Arthur by the hair. Sylvain characterizes this episode as one in which Arthur was the instigator, and she the victim. In all events, however, the Employee Handbook’s “Rules of Conduct” section explicitly forbids “[d]isorderly conduct such as fighting on [Spaulding Rehabilitation] premises,” and states that such a rule infraction “may lead to the dismissal of an employee.” (Employee Handbook, at p. 10.)
Although Sylvain avers that Arthur was the aggressor in their physical altercation, both employees were suspended from work after two colleagues who witnessed their behavior (individuals described in Paragraph 19 of the Complaint as “Arthur’s two friends”) reported the matter to a supervisor. Following an investigation into the incident, Spaulding Rehabilitation Executive Director George Gougian notified Sylvain in writing that her employment was terminated.
The Employee Handbook contained a set of explicit disclaimers, stating at the outset that “[t]he policies and procedures in this handbook are not intended to give rise to contractual rights or obligation.” The Employee Handbook further stated that “[e]mployment with [Spaulding Rehabilitation] is employment-at-will, terminable with or without cause.” The Handbook reaffirmed this point by stating that “this handbook does not change the employment-at-will relationship.” Finally, the Employee Handbook provided that it was being provided to employees for “review and reference,” and cautioned that “changes in policy and procedure may be made at any time throughout the year as policies and procedures are modified or developed.” (Employee Handbook, at p. 3.) The foregoing disclaimers were placed prominently at the very beginning of the Employee Handbook, situated on their own page of the manual (with no other writing on it), and identified clearly under the italicized word “NOTICE' in a large and bolded font.
At no time did Sylvain invoke the Employee Handbook’s Grievance Process to address the matter of her discharge from employment. Instead, Sylvain commenced the instant contract action, premised entirely on the allegation that Spaulding Rehabilitation had failed to adhere to the progressive “Corrective Discipline" policy set forth in its Employee Handbook.
DISCUSSION
I. STANDARD OF REVIEW
The SJC has outlined the standard for reviewing a motion to dismiss under Mass.RCiv.P. 12(b)(6) as follows. The factual allegations pleaded “must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). In this regard, “a plaintiffs obligation to provide the ‘grounds’ of his ‘entitle[ment] to relief requires more than mere labels and conclusions ...” Id. What is required at the pleading stage are “factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief. . .” Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 546-47 (2007)). In the case at bar, plaintiffs claims—resting as they do upon the singular assertion that “[a] fair reading of [Spaulding Rehabilitation’s] employee handbook constitutes an alteration of the employment at-will relationship”—reflect precisely the kind of summary labels and conclusions that will not suffice to demonstrate a right to relief for common-law breach of contract.
Having reviewed Sylvain’s contract claim and the terms of the Spaulding Rehabilitation Employee Handbook upon which it is based, the Court concludes that the claim fails to state a viable cause of action as a matter of law and must be dismissed. The Court rests this conclusion on each of three independently sufficient grounds.
A. CONTRACT STATUS OF DEFENDANT’S EMPLOYEE HANDBOOK
The allegations of the Complaint are insufficient to permit a reasonable inference that Spaulding Rehabilitation made a contractual commitment to adhere to specified corrective action policies contained in its Employee Handbook. The circumstances under which Massachusetts courts will treat an employee handbook or personnel manual as giving rise to contractual rights, thereby modifying the presumption of at-will employment, have evolved over the nearly 30 years since that issue was first addressed in our appellate cases. In its seminal decision in Jackson v. Action for Boston Community Development, *356 Inc., 403 Mass. 8 (1988), the SJC affirmed an award of summary judgment against an employee’s claim that ABCD had violated the terms of a grievance procedure contained in its personnel manual, holding that the manual lacked any of the conventional indicia of a mutually binding contract. In support of this conclusion, the Court cited six factors that it found belied the mutuality of agreement required for an enforceable contract. These factors were: (1) the employer had retained the right to modify the manual unilaterally; (2) the parties had not negotiated the manual’s terms; (3) the employee did not sign the manual or otherwise manifest assent to its provisions; (4) the manual stated that it provided only “guidance” about the employer’s policies; (5) the employer had not called any “special attention” to the manual; and (6) the manual did not recite any fixed period or term of employment. Jackson, 403 Mass. at 14-15.
In the wake of Jackson, lower state courts and federal courts tended to treat its holding as an inflexible six-factor test, the failure of any part of which precluded contractual enforcement of the terms of an employee handbook. See Moriarty et al., Employment Law, 45 Mass. Practice §2.6 and n.5 (2003 ed.) (collecting cases). In its 1996 decision in O’Brien v. New England Telephone & Telegraph Co., 422 Mass. 686 (1996), however, the SJC revisited the issue of employee handbooks as sources of contractual obligation, and relaxed the Jackson analysis considerably. Although stating that the Jackson factors “remain sound,” id. at 691, the Court made clear that these principles “are not a rigid list of prerequisites, but rather explain factors that would make a difference or might make a difference in deciding whether the terms of a personnel manual were at least impliedly part of an employment contract.” Id. at 692. The Court went on to emphasize that the absence of any one or two Jackson factors would not cariy significant weight in the analysis. Instead, courts must take a more functional approach, examining the overall facts that obtain—including the text of the manual, the circumstances of its distribution to employees, and the employer’s history of adherence to it. Id. at 691-94. Thus eschewing a paint-by-numbers application of Jackson, the Court held that, under the circumstances presented (including the fact that NET had a robust history of adhering to the terms of its handbook’s grievance procedure, had not reserved the right to modify the manual’s provisions unilaterally, and had not specified that it could discharge employees without cause), an employee like O’Brien could reasonably have relied on the handbook’s assurances as a source of contractual rights. Id. at 693-94.
Significantly, the O’Brien Court acknowledged that “the provisions of a personnel manual on analysis may grant no rights, ” but stated that “ [w] e need not now define the extent to which management may effectively reserve the right to change or withdraw a manual ... or the extent to which management may successfully provide that the manual from its inception or by its amendment creates no rights at all.” Id. at 693-94 (citing law journal article on the legal effect of handbook disclaimers, but observing that NET had included in its manual neither a reservation of the right to modify its terms unilaterally nor a disclaimer of contract or obligation under the handbook). Although the SJC has not had occasion to address the issue it thus explicitly left open in O'Brien, the Appeals Court has.
In Ferguson v. Host Inti, Inc., 53 Mass.App.Ct. 96 (2001), the Appeals Court held that, under the circumstances presented, the plaintiff “could reasonably believe that the [defendant] company would adhere to the portions of the manual establishing the system of progressive discipline and the guarantee of fair treatment, rather than apply them onlywhen it chose.” Id. at 103. Addressing a disclaimer in the subject employee handbook, the Ferguson Court held that the disclaimer was both limited in substance (reserving only the right to “disregard” or “cancel at any time ... all or any part of the handbook’s contents as circumstances may require”) and insufficiently highlighted to attract employees’ attention. Thus “buried” in the manual, the disclaimer clauses “could be viewed by the fact finder as the functional equivalent of fine print.” Id. at 103.
On these grounds, the Ferguson Court reversed the summary judgment that had been entered against the plaintiffs handbook-based contract claim. In doing so, however, the Court stressed that employers could effectively disclaim the conferral of contractual effect on their employee handbooks, by stating so explicitly and in a sufficiently prominent manner within the body of the handbook. The Court wrote:
[I] f the employer, for whatever reason, does notwant the manual to be capable of being construed by the court as a binding contract, there are simple ways to attain this goal. All that need be done is the inclusion in a very prominent position of an appropriate statement that there is no promise of any kind by the employer contained in the manual; that regardless of what the manual says or provides, the employer promises nothing.
Ferguson, 53 Mass.App.Ct. at 103 (quoting Woolley v. Hoffmann La Roche, Inc., 99 N.J. 284, 299 (1985)). Since O’Brien and Ferguson, this Court has on several occasions dismissed contract claims premised on employee handbooks in which contractual intent has been disclaimed with adequate clarity. See, e.g., Metelus v. Wingate Healthcare, Inc., 2014 WL 15056417, at *8 (Mass.Super. Feb., 2014) [32 Mass. L. Rptr. 16]; Barry v. Chase Precast Corp., 17 Mass. L. Rptr. 283 (Mass.Super. 2014).
Applying the evolved principles of law articulated in Jackson, O’Brien and Ferguson, the Court here concludes that the summary allegation contained in the Complaint that “[a] fair reading of [Spaulding Rehabilitation’s] employee handbook constitutes an alteration of the employment at-will relationship” represents a conclusory assertion that fails to demonstrate an entitlement to *357 breach of contract relief beyond the speculative level. Iannacchino, supra, 451 Mass. at 636. To the contrary, the facts pleaded in (and omitted from) the Complaint make clear that the Spaulding Rehabilitation Handbook cannot be accorded contractual effect consistent with the principles articulated by our appellate courts.
First, the Employee Handbook satisfies none of the Jackson factors that the SJC found (and subsequently confirmed in O'Brien) reflect the mutuality of intent required in a bilateral contract. Spaulding Rehabilitation expressly retained the right to modify the manual’s terms; the manual expressly provides that it is furnished to employees for “review and reference” regarding the company’s personnel policies; there is no evidence of any negotiation between Spaulding Rehabilitation and Sylvain (or any other employee) regarding the terms of the handbook; the manual states no period or term of employment; Spaulding Rehabilitation is not alleged to have called any “special attention” to the manual, or even to have distributed it to employees multiple times; and there is no allegation that Sylvain signed or otherwise manifested her assent to the manual, or so much as acknowledged that she had relied upon its terms. See Jackson, supra, 403 Mass. at 13-15 (reciting factors bearing on question of whether personnel handbook can be construed to embody contractually binding commitments by employer). Although the Court acknowledges that Jackson does not prescribe a fixed set of prerequisites or inflexible criteria governing when employee handbooks can be treated like contracts, and further acknowledges that the absence of one or two of the identified factors is not fatal to contract status, the Jackson factors will inform whether a reasonable employee could view the terms of a handbook as embodying contractually enforceable promises. O’Brien, 422 Mass. at 691-93. Accord Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 780-81 (2001). It is of some significance, therefore, that not one of the considerations that Jackson suggested would militate in favor of according the provisions of an employee handbook contractual effect are satisfied in the present case.[4]
Beyond Jackson, the Court is unable to see in the Complaint any reasonable basis upon which an employee like Sylvain could fairly rely on the Spaulding Rehabilitation Employee Handbook’s provisions as contractual commitments. To the contraiy, this defendant took pains to do the very things that the Courts in O’Brien and Ferguson indicated would allow an employer to avoid the conferral of contractual effect on its personnel manual. Thus, unlike the handbook at issue in O’Brien, which contained no reservation of the right to modify the manual unilaterally, and contained no express disclaimer of obligation, two factors the SJC suggested would militate against the inferrability of implied contractual commitments (see O’Brien, 422 Mass. at 693-94), Spaulding Rehabilitation’s Employee Handbook contains both aspects of this language. (Employee Handbook, at p. 3.) Likewise, unlike the limited disclaimer at issue in Ferguson (which recited that defendant Host reserved the right to disregard its manual’s provisions when circumstances so warranted, but made no mention of an employee’s at-will status or the fact that employees could be discharged at any time without cause), Spaulding Rehabilitation’s disclaimer is clear and unambiguous. Employees are advised that the Handbook was “not intended to give rise to contractual rights or obligation,” that “(e]mployment with [Spaulding Rehabilitation] is employment-at-will, terminable with or without cause,” and that the Handbook “does not change the employment-at-will relationship.” (Employee Handbook, at p. 3.) Finally, and again unlike Ferguson, Spaulding Rehabilitation did not “bury” its disclaimers in “fine print” or hide them inconspicuously in remote portions of the Employee Handbook. The disclaimers appear prominently at the beginning of the Handbook, are situated on their own page, and are introduced under the heading “NOTICE’ in large, bolded and italicized type font.[5]
The Court has considered the plaintiffs argument that the disclaimers contained in the defendant’s Employee Handbook fail the test of clarity and prominence announced in Ferguson, and respectfully cannot agree. The disclaimers here are more explicit, more clearly state that employment at the company is “at-will,” and give caution in unambiguous terms that employment can be terminated “with or without cause.” In no fair sense is this “fine print”; nor could it leave an employee confused or under the false impression that she was being promised a more secure form of employment. As for the disclaimers’ placement in the Handbook, the Court does not agree that they were buried or hidden among unrelated provisions unlikely to attract employee attention. Plaintiffs suggestion that an effective disclaimer somehow requires that the language be in a substantially larger 1ype-size, or appear multiple times within the manual, has never been the law in Massachusetts, and the undersigned will not legislate such a rule here. As Ferguson teaches, all that is required is that employees be given reasonably clear information in a reasonably clear way about where they stand in their employment; and Spaulding Rehabilitation has unmistakably done this. See also Metelus, supra at *8 (enforcing “clear and prominent disclaimers cautioning that the handbook did not create a contract, change the plaintiffs at-will employment status, create a term of employment, or provide conditions of employment”).
Personnel handbooks are a useful tool of business management, and benefit employees by educating them about policies and practices with which they will need to be familiar on the job. They are in widespread use throughout the Commonwealth, in organizations large and small. No public policy is served by creating nearly irrebuttable presumptions investing such manuals with contract status (that would obviously discourage their adoption), or re-writing the doctrine of at-will employment in Massachusetts so that handbook-based contract liti *358 gation initiated by discharged workers becomes the norm. In the case at bar, and applying conventional principles of contract law as they have been expounded by our appellate courts in this context, no reasonable employee in Sylvain’s position could have fairly believed that Spaulding Rehabilitation’s Employee Handbook endowed her with contractual rights to anything more secure than at-will employment. For this reason, the Complaint states no viable claim for breach of contract, and must be dismissed.
B. PLAINTIFFS CLAIMED CONTRACT VIOLATION
Even if the defendants’ Employee Handbook could properly be invested with contract status, the Court is unable to see in the Complaint allegations that make out a viable claim of breach. The thrust of Sylvain’s claim is that she was discharged from employment after a five-day investigation into her physical altercation with a fellow employee. Sylvain claims that Spaulding Rehabilitation’s “Corrective Discipline” policy assured her progressive discipline—viz., prior counseling and warnings—before she would face dismissal for misconduct. This is simply not so. Disclaimers aside, Spaulding Rehabilitation’s policy in fact provides that “corrective discipline usually proceeds in the following progressive steps,” and then specifies four increasingly more serious stages of disciplinary action. (Employee Handbook, at p. 15.) It goes without saying that a handbook’s statement of how discipline is “usually” administered cannot reasonably be construed as an inalterable commitment to discipline an employee in such a manner in all circumstances. Compare Ferguson, supra, 53 Mass.App.Ct. at 99 n.7 (defendant’s handbook stated: “When policies and procedures are not being followed, it is the responsibility of management to correct the situation. In Host/Travel Plazas this is done by means of our Progressive Discipline Policy” (emphasis added)). Merely stating that discipline is ordinarily meted out in accordance with a phased corrective action policy is plainly not a promissory assurance that can be enforced in contract.
To make the point clearer, Spaulding Rehabilitation’s Corrective Discipline policy goes on to provide that “(t]he progressive approach may be modified based on the facts and circumstances of each case. Some rule infractions may be so serious as to cause immediate discharge.” (Employee Handbook, at p. 15.) In the present case, the most reasonable construction of the Complaint is that, after conducting an investigation into Sylvain’s altercation with Arthur (a physical fight carried on in a patient room, and thus a violation of Rule 5 of the company’s “Rules of Conduct,” see Employee Handbook, at p. 10), Spaulding Rehabilitation decided to discharge Sylvain from employment immediately. Evidently treating a physical fight in front of a patient as a serious rule infraction warranting immediate dismissal, the company implemented a disciplinary decision in the very manner it reserved to itself the right to do. The Court discerns in these facts no demonstrated entitlement to relief for breach of contract. See Metelus, supra at *8 (noting that the defendant “reserved the right to accelerate or skip disciplinary measures as necessary based on the needs and safety of the facility,” and concluding on such basis that “(t)he discretionary nature of the policy alone shows that the plaintiffs did not have a reasonable expectation that [the defendant] would progressively discipline them”).
That the Complaint characterizes Arthur as the aggressor, and Sylvain the victim, in the fight that took place in this case is of little moment to the procedural violation it attributes to Spaulding Rehabilitation. The Employee Handbook at issue does not promise that no employee will be discharged without just cause. Nor does it assure that Spaulding Rehabilitation will be “right” in all of its disciplinary decisions, or that employees will in all instances agree with either the factual grounds for or basic fairness of the discipline administered to them. If the Handbook promises anything at all (and, for the reasons discussed ante, it does not), it promises a procedure whereby discipline will be imposed in progressively more serious stages unless company management determines that discharge on a more accelerated basis is warranted. That is what occurred here. If Sylvain disagreed with the merits of Spaulding Rehabilitation’s decision, an internal grievance procedure that she eschewed in this case (unreasonably, see infra) afforded her a right of multi-level appeal and review. But Sylvain’s personal disagreement with the substance of the company’s disciplinary judgment, however earnestly felt, cannot logically supply grounds to claim that Spaulding Rehabilitation violated the disciplinary procedure promised in its Employee Handbook. The same is true for Sylvain’s protestation that Arthurwas disciplined less severely than she.[6] Such disparate treatment might theoretically support a claim for employment discrimination under G.L.c. 15 IB; but it has nothing whatsoever to do with whether Spaulding Rehabilitation fulfilled the procedural commitments it is purported to have made in its Employee Handbook.
For this independently sufficient reason, the Complaint fails to state a claim for breach of contract on which relief can be granted. See Terravechia v. Fleet Bank, 2007 WL 1056818, at *3 (Mass.Super.Ct. March 2007) [22 Mass. L. Rptr. 314] (even where handbook gave rise to implied contract, terms of contract not violated where employer was permitted to bypass disciplinary steps).
C. PLAINTIFF’S FAILURE TO EXHAUST GRIEVANCE PROCEDURE
Finally, even if Spaulding Rehabilitation’s Employee Handbook invested Sylvain with a contractual right to progressive discipline, and even if the facts as pleaded established that the company had violated that right, Sylvain’s acknowledged failure to exhaust the internal grievance procedure available to her in the Handbook bars such a contract claim.[7] The facts in this regard are set forth explicitly in the Complaint, plaintiff asserting that she deliberately bypassed the Grievance Process for two reasons: (1) the Employee *359 Handbook did not state explicitly that employees were required to utilize the grievance procedure as a condition precedent to asserting a civil contractual claim thereunder (Compl. at Para. 25); and (2) Sylvain observed that the highest level of review in the Grievance Process was performed by the Executive Director, the same person who had signed her termination notice. Sylvain thus regarded pursuit of a grievance as a futility. (Compl. at Para. 24). The Court does not agree.
In O’Brien, after concluding that NET’S personnel manual could be deemed to provide the plaintiff with a source of contractual rights, the SJC held that the plaintiff was nevertheless barred from maintaining a breach of contract claim premised thereon by reason of her failure to exhaust the grievance procedure contained in the manual. The Court wrote:
O’Brien did not follow the grievance procedure, and that omission, as a matter of law, is fatal to her claim that NET violated the terms of her employment. O’Brien knew of the grievance procedure (she had notice of it in any event) and had used it successfully. She cannot assert a right against unfair treatment under one part of her employment contract and fail to follow procedures set forth in another part of that contract that would provide relief from that unfair treatment.
O’Brien, 422 Mass. at 695 (affirming summary judgment against contract claim). Accord Berkowitz v. President & Fellows of Harvard College, 58 Mass.App.Ct. 262, 275-76 (2003) (“Where employment rights are contractual, and the contract establishes an internal grievance procedure for resolving disputes, the procedure ought to be followed” (dismissing handbook-based contract claim for failure to exhaust grievance procedure)).
That is precisely the situation that obtains in the case at bar. Sylvain seeks to rest a breach of contract claim on the Corrective Discipline provisions of Spaulding Rehabilitation’s Employee Handbook; but she does so while freely admitting that she failed to utilize the grievance procedure available to challenge the company’s disciplinary action internally. As in O’Brien and Berkowitz, her contract claim must be dismissed for this reason alone.
In opposing summary judgment, Sylvain first argues that her failure to utilize the remedies available through the Grievance Process should be excused because the Employee Handbook failed to specify that exhaustion of this procedure was a condition precedent to asserting contractual rights under the Handbook in court. This argument, respectfully, makes no sense. For one, Spaulding Rehabilitation cannot rationally be faulted for failing to condition the assertion of Handbook-based contract claims on a prior exhaustion of its Grievance Process. After all, the Handbook itself states explicitly that it is not a source of any contract rights whatsoever. Litigants may be permitted to plead in the alternative; but it is folly to expect a personnel manual to be drafted that way. More to the point, the law does not require that internal grievance procedure exhaustion be compelled in express terms as a condition for making later contract claims in court. Indeed, the declared point of this manual’s Grievance Process is to head off problems in a non-legalistic setting so that they do not devolve into adversarial litigation. Suggesting a pathway to the very litigation sought to be avoided cannot sensibly be required. As the Court noted in O’Brien, where NET’S personnel manual did not in terms mandate exhaustion of its internal grievance procedure,[8] the legal requirement that the employee utilize the grievance procedure before resorting to the courts is a function of basic equity. If you want to make claims under a contract, you have to accept the contract as a whole and make use of its available remedies before claiming breach. See Berkowitz, 58 Mass.App.Ct. at 276 (noting that enforcement of an obligation to exhaust “allows the contracting parties an opportunity to work out their differences and preserves scarce judicial resources”). This obligation is not logically affected by the employee’s discretionary right not to bring a grievance at all:
The grievance procedure was not optional in the sense that O’Brien could assert a violation of rights under the personnel manual without following the grievance procedure. It was an optional procedure only in that an employee with a grievance could decide not to pursue the grievance.
O’Brien, 422 Mass. at 695. Such is plainly the case with respect to Sylvain’s analogous claim here.
As for the plaintiffs contention that exhaustion of the Grievance Process would have been a futility because the Executive Director of Spaulding Rehabilitation signed her termination notice, the Court is unpersuaded. For one, the grievance procedure at issue here called for successive levels of review within the organization— starting (in the case of a discharged employee such as Sylvain) at Step II with an appeal to the department head, progressing at Step III to a review by the Human Resources Department, and concluding at Step IV with a final review by the Executive Director. Significantly, the procedure is drafted so that only the disciplined employee may, to the extent she remains dissatisfied with the disciplinary action Imposed, advance her grievance to successively higher levels of authority within the organization. At any step, however, at least two of which take place without the involvement of the Executive Director,[9] the grieving employee may find satisfaction and resolve the dispute—with no right of appeal by the disciplining manager. In other words, Sylvain could have had her discipline-related concerns satisfactorily addressed at multiple levels of the Grievance Process in which the Executive Director played no role; but she elected to forgo the entire procedure altogether (and not merely at Step IV). In these circumstances, the plaintiffs failure to exhaust the Spaulding Rehabilitation Grievance Process cannot be excused as a matter of futility.
*360 Even if Sylvain’s grievance would have inevitably reached the Executive Director level (and there is no factual basis in the Complaint upon which such an inference can be drawn), and even if the Executive Director himself had participated substantively in the discharge decision, this would still not excuse resort to the Grievance Process. The manifest (if undeclared) purpose of the Employee Handbook’s grievance procedure is to afford management—at successively higher levels—the opportunity to reconsider the wisdom or fairness of a disciplinary decision based on new or revisited information. The SJC made this very point in O’Brien:
The grievance procedure provided a ready means by which O’Brien could have brought to the attention of management Hurley’s unfair treatment of her and the reasons why she made the “hang-up” telephone calls. Pursuit of this available process might have demonstrated sufficient mitigating circumstances to rebut what management might otherwise have perceived as “gross violations” of rules of law that were “cause for immediate discharge.” Because O’Brien failed to pursue the grievance procedure, we need not decide whether, as a matter of law, her improper conduct justified her discharge on some standard that the personnel manual might be read to prescribe . . .
O’Brien, 422 Mass, at 696.
This is precisely the situation that obtains in the case at bar. Sylvain has brought a contract action, suggesting that she was the victim of another employee’s aggressive provocations, and thus should not have been discharged for disorderly conduct. Sylvain maintains that she was a satisfactorily-performing employee, and that she was scape-goated for a fight in which she played only a minor role. Sylvain states that the two employees who witnessed the altercation were friends of Arthur, thereby implying that management’s internal investigation was tainted. The Court assumes for present purposes that all of this is true. But as O’Brien makes clear, these were the very kinds of facts that Sylvain could have brought forward during the Grievance Process—information that might conceivably have caused any of the three step-level managers (including Executive Director Gougian, should the grievance have reached him) to reconsider the discipline that had been imposed. Sylvain’s summary insistence that exhaustion of the Grievance Process would have been a futilily because the Executive Director signed her termination notice disregards this essential purpose of the procedure, and posits speculation (in lieu of facts) that the Court simply cannot credit. Cf. Etedali v. Town of Danvers, 2009 LEXIS 67 (Mass.App.Div. 2009) (bypassing grievance procedure on grounds of futility requires demonstrating that employer had “repudiated or nullified the grievance procedure” or had otherwise “determined to subvert it”).
Accordingly, even if the Employee Handbook gave rise to contract rights, and even if the allegations of the Complaint permitted the inference that Spaulding Rehabilitation breached one of the procedural provisions set forth therein, Sylvain’s acknowledged failure to invoke and exhaust the Grievance Process of the very contract she seeks to enforce forecloses her claim under the holdings of O’Brien and Berkowitz. This constitutes an adequate and independent ground for dismissal of the Complaint.
CONCLUSION AND ORDER
For all of the foregoing reasons, the Defendants’ Motion to Dismiss the Complaint is hereby ALLOWED.

 Plaintiff actually sued two Spaulding-affiliated entities, neither of which were her actual employer. This fact appears to be undisputed, and the Court has allowed a motion to substitute Spaulding Nursing and Therapy Center—North End as the sole party-defendant. This decision, however, will refer to the defendant as “Spaulding Rehabilitation.”

 The following facts are drawn from the plaintiffs Complaint, as Rule 12(b) requires.

 Although not attached to the Complaint, the Employee Handbook is central to the plaintiffs claim in this case. Accordingly, the Court may properly consider this document in connection with the defendant’s Rule 12(b) Motion to Dismiss without converting such motion to one for summary judgment. See Schaer v. Brandeis University, 432 Mass. 474 (2000).

 In Ferguson, by contrast, the defendant’s personnel manual was distributed to employees multiple times, and employees were in each instance required to sign for it.

 Although the Court notes that it appears that Spaulding Rehabilitation’s contractual disclaimers are placed in a similar location within the manual as Ferguson’s (immediately following a letter of welcome and introduction from the company’s chief executive), none of the other distinguishing features described above characterized the handbook at issue in Ferguson.

 Although the Complaint does not endeavor to give the reasons for the unequal discipline meted out to the two participants-in the patient room fight, the allegation that the only two witnesses to the event were friends of Arthur (Compl. at Para. 19) implies the explanation.

 Although puzzled by the failure of the defendants to advance this argument anywhere in their Memorandum, the Court is clearly not foreclosed from relying on such ground as a basis for dismissal of the Complaint.

 The same is true of the handbook at issue in Berkowitz. This fact alone would appear to negate the plaintiffs argument. Both the SJC and the Appeals Court are evidently not disturbed by the fact that a handbook whose grievance procedure was disregarded did not recite that exhaustion was a condition precedent to the prosecution of contract claims thereunder in court. In both O'Brien and Berkowitz, the plaintiffs failure to exhaust was nevertheless found fatal to the contract claim.

 In point of fact, the Complaint contains no allegations as to who at Spaulding Rehabilitation conducted the disciplinary investigation and/or made the determination to discharge Sylvain from employment. The Executive Director may well have had no substantive involvement in these matters at all. The argument of plaintiffs counsel at hearing that the simple fact of the Executive Director’s signature on her discharge notice permits a reasonable inference that he participated in either the underlying disciplinary decision or the ensuing investigational process (or both) places far too much weight on this thin shard of evidence. Counsel’s related contention that no Spaulding Rehabilitation manager in the Grievance Process would ever countermand a decision that had been approved by the Executive Director, lest he/she face termination, posits a highly speculative fact without any actual evidence in the Complaint to support it.